Wolcott v. Bachman.

---

## WOLCOTT v. BACHMAN.

(February 5, 1890.)

VAGRANCY—JUSTICE OF THE PEACE—FALSE IMPRISONMENT—ASSIGNMENT OF ERRORS.

1. As Rev. St. Wyo. § 3647, expressly confers jurisdiction of the offense of vagrancy on justices of the peace, and authorizes the commitment of the offender, such a commitment does not constitute false imprisonment.

2. As errors occurring upon the trial, which are properly grounds for a new trial, can only be brought into the record by a motion for a new trial, and must be included in the motion to bring them

v.3wyo.—13

to the attention of the supreme court, it is not necessary to separately assign them as error. They are sufficiently included in the assignment that there was error in overruling the motion for new trial.

SAUFLEY, J., dissents.

Error to district court, Converse county.

This was an action for false imprisonment brought by the defendant in error against the plaintiff in error. The latter, being a justice of the peace in the county of Albany, sentenced the defendant in error to imprisonment in the county jail for vagrancy without any criminal complaint being made, the defendant in error being at that time before the justice on another charge. W. F. Mechum, another justice of the peace, in whose precinct the plaintiff in error was acting at the time, carried the sentence into effect by issuing a *mittimus*, under which the defendant in error was imprisoned. Upon a trial by jury in the district court of the county of Converse, a verdict was returned for the plaintiff, Bachman, assessing his damages at $3,500. The defendant, Wolcott, moved the court for a new trial, alleging in his motion that different errors had been committed by the court during the trial of the cause. The motion being overruled, judgment was entered for the plaintiff upon the verdict. Reversed.

*Corlett, Lacey & Riner*, for plaintiff in error. *H. V. S. Groesbeck*, for defendant in error.

VAN DEVANTER, C. J. The petition in error contains 15 assignments of error, the first 14 of which relate to alleged errors occurring upon the trial, and the fifteenth is based upon the overruling of the motion for a new trial. Errors occurring upon the trial can only be preserved and fully brought into the record by a motion for a new trial, and, if such errors are not made the basis of a motion for a new trial in the court below, they are waived, and this court cannot consider them. Then, since it is necessary to complain of such errors in a motion for a new trial in order to ultimately bring them to the attention of the appellate court, they should not be separately assigned as error here, but will be sufficiently included in the assignment that there was error in the overruling of the motion for a new trial. This, however, is only true as to such matters as are properly

Wolcott v. Bachman.

grounds for a new trial, and all other errors in the rulings and decisions of the trial court should be separately assigned as such. U. S. v. Trabing, ante, 144, 6 Pac. Rep. 721.

Without considering the first 14 assignments in this case, we will inquire whether there was error in the overruling of the motion for a new trial. In its charge to the jury, the court gave the following instruction, over the objection of the defendant: "If you find as a fact that this plaintiff was imprisoned in the Albany county jail upon a commitment or *mittimus* issued by Justice of the Peace Mechum, and you find that the commitment was in pursuance of a supposed or alleged sentence of a justice of the peace sentencing this man to be imprisoned for the alleged crime of vagrancy, if you find those to be the facts, then I charge you that would constitute false imprisonment, as to Mechum, upon its face. You are not trying Mechum. You must further find that Mechum was directed or controlled by this defendant." This instruction assumes that a justice of the peace does not have jurisdiction to commit to the county jail for vagrancy, and in so doing it palpably misstates the law. Our statute (section 3647) specially confers jurisdiction of the offense of vagrancy on justices of the peace, and authorizes the commitment of the offender; but this instruction states that such a commitment is in itself false imprisonment. To illustrate the falsity of the statement contained in the instruction, the plaintiff might have been imprisoned in the Albany county jail upon a commitment or *mittimus* issued by Justice of the Peace Mechum, and that commitment might have been in pursuance of a sentence of a justice of the peace sentencing the plaintiff to be imprisoned for the crime of vagrancy, and still the proceedings before the justice and the imprisonment might in all respects have been in strict conformity to law. The language of the instruction does not necessarily refer to an unlawful sentence, for it is broad enough in its terms to include a sentence which is entirely lawful. The only intimation found in the instruction as to the character of the sentence therein referred to is in the use of the phrase, "a supposed or alleged sentence;" but this expression can in no manner be construed to mean, or be equivalent to, a void or unlawful sentence. As before shown, a justice of

the peace has jurisdiction of the offense, which is the subject-matter, so that if he obtain jurisdiction over the person of the offender he may then lawfully impose the imprisonment. In this case, one point of contention was as to whether the plaintiff had submitted himself to the jurisdiction of the justice, and this, being a question of fact, should properly have been submitted to the jury, but by the court's charge the jury was precluded from in any manner considering the matter of jurisdiction; for they were, in effect, told by this instruction that if they should find that the defendant directed the imprisonment of the plaintiff, then the liability of the defendant was established. Thus the court determined for the jury that the justice was without jurisdiction of the person, and that the imprisonment was unlawful. The instruction complained of was clearly erroneous as a proposition of law, and could not have done otherwise than mislead the jury. The giving of the instruction having been complained of in the motion for a new trial, that motion should have been sustained. The judgment of the court below is reversed, and a new trial ordered.

CORN, J., concurs.

SAUFLEY, J. I dissent from the opinion delivered by the chief justice. In presenting the reasons for my dissent, I will, for the sake of convenience, mention Wolcott as the defendant, and Bachman as the plaintiff; such being their attitude towards each other in the trial court. The instruction given by the district court, which is made the ground of reversal, is as favorable to the defendant as either the pleading or the proof warrant. It is, moreover, and seemingly, in restraint of plaintiff's right of recovery, expressed in cautionary language stronger than need be. There may be records before this court which exhibit acts of oppression, on the part of the strong towards the weak, more offensive to the law than does this, but I have not seen them. Nor do I recall, during the course of my experience at the bar, the conduct of any one in authority more clearly outside the line of duty,—more obviously beyond the scope of legitimate power. I propose to show—*First*, that under the pleading the district court could not have given

Wolcott v. Bachman.

an instruction different in legal intendment from the one given; and, *second*, that if the answer of the defendant to the charge of false imprisonment had been in avoidance instead of by common traverse, still, under the proof, the court could not have given a different instruction.

Considering the last proposition first, it will be necessary to succinctly state the chief facts as they appear of record. In the month of May, 1887, Bachman, being then a young man of about 20 years of age, was residing in the village of Douglass, Wyo. In this month he was arrested on a charge of grand larceny, preferred by a worthless character, who was himself subsequently sent to the penitentiary. The warrant was issued by Justice Mecum, and the trial had, on a change of venue, before the defendant, Justice Wolcott. The examination resulted in a discharge of Bachman. At the conclusion of this investigation, Justice Wolcott, without any charge being made against Bachman, without any evidence heard, without even the form or pretense of a trial, conceived the idea of sending Bachman to jail for three months, and fined him $100, on the supposition that he was a vagrant. I will here quote a part of the testimony of Mr. Nichols, the prosecuting attorney in the grand larceny examination, and a part of the testimony of Mr. Camplin, who represented Bachman. The defendant, Wolcott, did not testify.

In reply to a question by plaintiff's counsel, asking what transpired at the conclusion of the investigation of the larceny charge, Mr. Nichols said: "He [Wolcott] said a great deal. He called the gentleman up, and lectured him for quite a long time. He then made the remark that he was going to sentence him to pay a fine of $100, and imprisonment in the county jail at hard labor for three months, on the ground that he was a vagrant. He said it was not probably just in accordance with law to do that. Ordinarily, a man ought to be charged with that offense, but inasmuch as the man was before him, he would waive the technicalities of the law, and would assume the responsibility, and did not want any advice from the prosecuting attorney. *Question.* Did you attempt to advise him? *Answer.* I did. He said he was running that himself, and would take the re-

sponsibility. · *Q.* Did you hear the defendant make a demand for a trial,—the defendant in that case and the plaintiff in this case? *A.* It is my recollection that his counsel demanded it, and I think the defendant said something about it, and objected to being sentenced without a trial, and wanted a trial. *Q.* Do you know whether or not it was refused by the defendant, Wolcott? *A.* Yes, sir; I know that he said he could not have any trial." In a few minutes after this extraordinary proceeding had ended, Nichols met the justice in front of his office, and remonstrated with him on the illegal course he had taken, and asked an explanation. To this Wolcott responded that they did not try cases in this territory according to law, but took a short cut sometimes; that he knew he had not followed the law, but he did it thinking it necessary,—the law didn't cut any figure in a case of that kind. The attorney then tried to induce the justice to go back and vacate the order he had made, but he refused, saying he would take his chances; that he didn't like for men to live as Bachman, that it did not make any difference about the law; that the county ought not to be put to the expense of a trial; that he knew he had not proceeded according to law, but he was going to teach Bachman a lesson, and was going to see that his order was carried out.

Mr. Camplin proves substantially the same as Mr. Nichols as to the occurrence in the justice's room, with this addition: that he made a written protest against a condemnation without trial. This protest is copied into the record, and has this indorsement: "The above recital is correct, and the demand therein made denied. [Signed] FRANK WOLCOTT, Justice of the Peace."

W. F. Mecum, called on behalf of Wolcott, testified that, after the hearing had been completed on the charge of larceny, the justice called on Bachman to stand up, and proceeded to question him. After he got through with his interrogatories he said: "I will discharge you from the preliminary investigation, but I will find you guilty of vagrancy." It was then that the defendant and his counsel demanded a trial on this charge, and protested against the order of fine and imprisonment being made without an accusation and without a hearing.

It will be observed that the justice does not

Wolcott v. Bachman.

elicit any information from Bachman during the larceny investigation, nor while Bachman was a witness, if, indeed, he was a witness, at all, (the record not disclosing that fact,) but he compels Bachman to arise, and then begins the inquisition. Acting on answers made under compulsion, but not under oath; not pursuant to any legal charge or accusation; refusing to the prisoner a trial; hearing no witnesses for or against him; confessing that he was acting without law and against law; and boastfully announcing his assumption of responsibility,—the justice ordered that the prisoner be fined $100, and imprisoned three months at hard labor. He is not content with entering this order formally on his docket, but, after delivering it to his associate, whose place he had temporarily filled, he both advised and directed the associate to issue a *mittimus* committing Bachman to jail. The *mittimus* was issued, and the prisoner confined in jail from three to four weeks, when he was released by order of Associate Justice BLAIR, of the supreme court, on a writ of *habeas corpus*. Thereupon a suit was brought by plaintiff against defendant, Wolcott, for false imprisonment; the trial resulting in a verdict and judgment for plaintiff. The instruction given by the trial court, (his honor, Chief Justice MAGINNIS,) which is held to be erroneous by the majority of this court, is in full thus:

"Gentlemen of the jury: This is an action for false imprisonment, brought by the plaintiff against the defendant. If you find the facts to be such as are set out in the petition and the claim of the plaintiff, those facts, if proven to your satisfaction, by a preponderance of the evidence, would constitute, and do constitute, a case of false imprisonment. The plaintiff must prove, in order to sustain his case, the fact of an imprisonment. He must prove that as to this defendant it was caused by the act of defendant himself, or it was caused by the act of another person who was instigated, directed, or controlled by the defendant. That is to say, a person is guilty of false imprisonment who himself imprisons, without process of law,—without authority of law. So you must find from the facts in this case that there was an imprisonment, and that it was done either by the defendant himself, or by him through the person who

did cause the imprisonment. Of course, these matters must be proved by a preponderance of the evidence of the plaintiff. As I said in the beginning, if you find as a fact that this plaintiff was imprisoned in the Albany county jail upon a commitment or *mittimus* issued by Justice MECUM, of this county, and you find that that commitment was in pursuance of a supposed or alleged sentence of a justice of the peace sentencing this man to be imprisoned for the alleged crime of vagrancy, if you find those to be the facts, then I charge you that would be false imprisonment, as to Mecum, upon its face. You are not, however, trying Mecum. You must further find that Mecum was directed or controlled by this defendant." The remainder of the charge relates to the elements of damage.

The first criticism of this instruction contained in the prevailing opinion is that "it assumes that a justice of the peace does not have jurisdiction to commit to the county jail for vagrancy, and in so doing it palpably misstates the law." I am unable to perceive that there is any such assumption. It simply assumes, as the trial judge was clearly justified in assuming, that, if a certain state of facts were shown to exist, they constituted a case of false imprisonment. The judge might, without offense to any principle of jurisprudence, have gone further, and assumed that, in a country regulated by fixed and enlightened law, no person, however exalted his station, is clothed with either the legal or moral right to imprison another, "to teach him a lesson," or for any other arbitrary purpose. No justification of the act was pleaded, and none was proven, or attempted to be proven. A justice of the peace holds an examining trial of a person charged with felony. He finds that the charge is not sustained. He dismisses the accusation, and then of his own motion proceeds to interrogate the prisoner touching his vocation. The prisoner answers that he is a musician, and earns $2.50 per night playing for saloons; that he has a mistress, from whom he occasionally gets money when short. The judicial ire is at once aroused. His sense of propriety is offended. In righteousness and in judgment he is moved to "teach the prisoner a lesson." He refuses him a trial; refuses him even the poor privilege of defending

against an unformulated, unverified suspicion; and causes him to be hurried off to prison. On this state of facts, the majority of this court are of opinion that the trial court assumed that a justice has no jurisdiction of vagrancy. The majority are further of the opinion that it should have been left to the jury whether Bachman voluntarily submitted himself to the jurisdiction of the justice. I fully concede that, if an inferior tribunal has jurisdiction of the person and of the offense charged, no mistake of his own, however egregious, will make him liable to an action for false imprisonment. But the proposition that Wolcott had jurisdiction of the person of Bachman is, to my understanding, without the slightest foundation, either of fact or law. The record he made himself on the justice's docket shows that there was neither accusation, warrant, arrest, witness, evidence, nor trial. The record affirmatively discloses—a record, too, signed by his own hand—that he refused the prisoner a trial. True it is that a justice has jurisdiction of the offense of vagrancy; but, because of this, can a magistrate imprison a citizen without trial, or even the form of trial, and more especially where that citizen has not been brought before him on a charge, and then excuse himself upon the ground that he had jurisdiction of the offense of which he supposed the citizen to be guilty? This would be worse than nonsense. Where would such things end, if such be the law? A justice has jurisdiction, as an examining court, of the crime of murder. Suppose he should, without information lodged, without warrant, without testimony, without trial, and after refusing a trial, commit a person to jail on suspicion that he was guilty of the crime. Could he be excused on the ground that he had jurisdiction to examine and commit for felonies?

"In this case," proceeds the prevailing opinion, "one point of contention was as to whether the plaintiff had submitted himself to the jurisdiction of the justice, and this, being a question of fact, should properly have been submitted to the jury; but by the court's charge they were precluded from in any manner, considering the matter of jurisdiction." I am unable to perceive any such point of contention in the record. Not a question of fact was raised looking to this point. There is not one witness who offered to speak of the transaction in the justice's room who did not declare in unqualified and unmistakable language, that both the prisoner and his counsel protested against the judgment of condemnation without trial. If an earnest and perhaps indignant, protest against condemning unheard one against whom no accusation is brought, can be tortured into the equivalent of a voluntary submission to jurisdiction, then I confess that I am led into a new field of jurisprudence, which I have not hitherto had the honor to explore. Beside, there is a fact more potential than any other, which shows that there was no such point raised in the trial court. That fact is that the defendant was then represented by counsel of zeal and distinguished ability, and that counsel, as this record shows, offered but one instruction, excepting an instruction partly on exemplary damage, which is as follows: "To entitle the plaintiff to recover for the alleged imprisonment, there must have been an absence of probable cause. There is a probable cause for a person's arrest when the person arrested is probably guilty of the offense for which the arrest is made." This was quite properly refused, and none other was asked. In argument before the court the proposition was advanced that Bachman's demand for a trial when he was first informed by the justice that he proposed to impose the punishment was such a submission to the jurisdiction of the justice as to bar all action for false imprisonment. But it occurred to me at the time, as I supposed it did to the majority, that such contention was made, as does sometimes occur, in the extreme zest of advocacy. Certainly, the record fails to show that the point was raised in the trial court; and equally certain is it, according to my interpretation of language, that no testimony was heard from which it might have been raised.

To have given the defendant jurisdiction of the person of plaintiff, there should have been, in the absence of a voluntary submission, an information or complaint under oath, lodged with him, charging that plaintiff is a vagrant. Section 1025 of the Revised Statutes provides that, "upon complaint made under oath by any resident of the county before any justice of the peace within whose jurisdiction such person may be found, it shall be the duty of such justice to

Wolcott v. Bachman.

issue a warrant * * * for the apprehension of such person so charged, * * * and any person found guilty of being a vagrant * * * shall be punished," etc. Section 3620, c. 3, tit. "Jurisdiction and Procedure in Criminal Cases,", reads: "Justices of the peace, in their respective counties, have jurisdiction of, and may hear, try and determine, all public offenses, less than felony, except as otherwise provided by law, in which the punishment prescribed by law does not exceed a fine of $100, and imprisonment for six months in the county jail, on information or complaint under oath, saving to the defendant the right of appeal to the district court." Section 3621: "Criminal actions, for the commission of a public offense, may be commenced before a justice of the peace, by an information subscribed and sworn to, and filed with the justice." Section 3622: "Such information must contain, * * * *Third*, a statement of the acts constituting the offense in ordinary and concise language, and the time and place of the commission of the offense, as near as may be." Subsequent sections provide that, when brought before the justice, "the charge against him must be distinctly read;" his plea entered on the docket; a jury given him, if demanded; and, if found guilty upon the issue made by the charge and the plea, sentence shall be imposed. Almost every section in chapter 3 was ruthlessly violated by the justice, who imposed the sentence of fine and imprisonment. But that which is most important is that many of the errors were such as to make not simply a voidable, but an absolutely void judgment. By the requirements of sections 1025, 3620–3622, there can be no doubt that the charge or complaint under oath is indispensable to the exercise of jurisdiction. It is as necessary, as the service of a summons in a civil action, to give the court jurisdiction to render a personal judgment. Without it, a justice has no more authority to proceed with a trial than a district court has to try and condemn a man for murder without an indictment. Such being unquestionably the law in this territory, and there not being even the shadow of a pretense that a charge of vagrancy has been made against Bachman, what reason, founded in either written law or practical common sense, could there have been in submitting any question to the jury

other than the fact of imprisonment, the connection of Wolcott with it, and the amount of damages. It was for the court to determine from the proof (on a proper state of the pleadings) whether the conduct of the justice was within the limit of his jurisdiction. The jury had nothing to do with this. The court did determine it, and, to my mind, his conclusion was so obviously correct that I perceive no room for a contrary opinion.

But even if there had been testimony upon which the trial court might have predicated an instruction based upon the voluntary submission of Bachman, the pleadings in this case would not have authorized it. The petition was in the usual form for false imprisonment. The answer of the defendant was in these words: "Comes now the defendant, and for answer to the petition of plaintiff herein denies each and every allegation in said petition contained." Under this answer, I hold that, even if it be not obnoxious to the charge of ambiguity, nothing is put in issue except those questions which were submitted by the trial court to the jury, to-wit, the fact of imprisonment, the connection of Wolcott with it, and the amount of damages. By the Civil Code of Wyoming, (section 2457,) "the answer shall contain—*First*, a general or specific denial of each material allegation of the petition controverted by the defendant; *second*, a statement of any new matter constituting a defense, counter-claim, or set-off, in ordinary and concise language." The answer in this case is a type, pure and simple, of what is called, in code pleading, a "general denial,"—a form of pleading loose enough when legitimately employed, but which by the common practice of the profession has been perverted to uses outside the range of many of the accepted rules of pleading. But conceding, for the moment, that this answer is faultless in form, let us see what is put in issue. Under the nomenclature of the common law, an action for unlawfully imprisoning was trespass. It is commonly supposed that the "general denial" of the Code is the same, in effect, as the "general issue," under this ancient system of pleading, the only difference being in name. In the first place, the supposition is incorrect; and, in the second place, if correct, it would, as applied to the case in hearing, cut the defendant off from any complaint of the instruc-

tions. The "general issue" in trespass is "Not guilty." If this be the form of the answer, then, in the language of Mr. Stephen in his work on Pleading, "it evidently amounts to a denial of the trespasses alleged, and no more. Therefore if, in trespass for assault and battery, the case be that the defendant has not assaulted or beat the plaintiff, it will be proper that he should plead the general issue; but, if his case be of any other description, the plea will be inapplicable." Pages 159, 160. In Gould, Pl. c. 6, § 44, the author says: "According to the strict original principles of the common law, no defenses would appear to be admissible in any case, under the general issue, except such as go in denial of the truth of the declaration; and therefore all special matters of defense which admit, but go in avoidance of the declaration, would seem to require special pleas in bar, as being inconsistent with the general issue." "In trespass, whether to the person, personal property, or real property, the general issue was 'not guilty.' In injuries to the absolute rights of persons, this only put in issue the act complained of; but in injuries to the relative rights, and to personal and real property, it put in issue the existence of the right, and the commission of the act complained of." Chit. Pl. (10th Amer. Ed.) 606. Again, on page 658: "In all actions for trespass, whether to the person, personal or real property, matter in discharge or in confession and avoidance of the action must be specially pleaded. * * * The plea of not guilty, therefore, is proper in trespass to persons, if the defendant committed no assault and battery or imprisonment; but in trespass to persons; *son assault demesne;* moderate correction; *malliter manus imposuit,* to preserve the peace; or a justification in defense of the possession of real or personal property; or by authority of law without proof, as a private individual; or under civil process, either mesne or final, of superior, inferior, or foreign courts,—must always have been pleaded specially. A plea of justification is to enumerate and cover the whole, or the plaintiff, without a special replication or new assignment, will be entitled to a verdict for the trespasses proved, and not justified; for whoever assaults and imprisons another, (except in some cases, under particular statute hereafter noticed,) must

justify himself by showing specially to the court that the act was lawful. A plea justifying the arrest of plaintiff upon the ground that a felony had been committed, and that there was reasonable grounds to suspect and accuse the plaintiff, must distinctly state the specific reasons for suspecting the plaintiff. And a plea justifying assault and imprisonment on the ground of a breach of the peace committed by the plaintiff must show that a breach of the peace was continuing, or show facts from which a renewal of the breach was to be apprehended, and as little as possible should be left to inference. There are positive rules of law, in order to prevent surprise to the plaintiff at the trial by the defendant then assigning various reasons and causes for imprisoning the plaintiff, of which he had no notice, and which consequently he could not be prepared to meet at the trial, on the plea of not guilty, on fair and equal terms with respect to the evidence and proof of facts." The exception referred to by the author in the above quotation was by virtue of an act of parliament passed during the reign of George IV., which allowed mayors, constables, justices, and other peace-officers, in actions against them for anything done by virtue of their offices, to plead the general issue, and give special matter in evidence. This was a repeal of the common-law rule to that extent, and the party so pleading was required by the statute to insert on the margin of the plea the words, "By the statute." So it appears, beyond all cavil, that, except as modified by statute or rules of court, an officer or other person, who desires to avail himself of special matter in defense, must plead in bar, by way of confession and avoidance.

In the present lax system of pleading prevailing in this jurisdiction, a quotation from the report of the common-law commissioner, on which the rule of Hil. T. 4 Wm. IV., was founded, is not inapt. In treating of the use of the general issue, the commissioners say: "Consisting, as that plea does, of a mere summary denial of the case stated by the plaintiff, and giving no notice of any defensive allegation on which the defendant means to rely, it sends the whole case on either side to trial, without distinguishing the fact from the law, and without finding the exact question or questions of fact to be tried. It not

Wolcott v. Bachman.

unfrequently, therefore, happens that the parties are taken by surprise, and find themselves opposed by some unexpected matter of defense or reply, which, from the want of timely notice, they are not in due condition to resist." "Another ill consequence attendant upon the general issue is that, as the true point of decision has not been evolved in the pleading, it becomes the business of the judge to extract it from the proofs and allegations before him, to sever correctly the law from the facts of the case, and again the facts admitted from those in controversy, and to present the latter in a distinct shape to the jury for their consideration,—an analysis which the rapidity and tumult of a trial at *nisi prius* renders extremely difficult, and which is often defectively conducted." These observations, founded as they are in both reason and experience, apply with peculiar force to our customarily loose habits in pleading the general denial, and they should surely work a restraint upon the intelligent and honest practitioner in the abuse of that plea, and its habitual prostitution to such an extent that in many instances the wisest judge will be totally unable to tell whether the party who verifies it is swearing to a statement of fact or a conclusion of law. And this is specially true of the answer of the defendant in this case, as will more fully appear in the sequel of this opinion. When he denies each allegation of the petition, it defies all legal acumen whether he denies the fact of the imprisonment, or, admitting the fact, denies simply his liability.

But the general denial of the Code is not the same as the general issue at common law. Pleas in bar are not susceptible of any other division than (1) pleas of traverse or denial; (2) pleas by way of confession and avoidance. One of the chief objects in abolishing the general issue, and substituting in lieu of it the answer, of which the general denial is a subdivision, was to avoid the resulting inconvenience of the conflict between this rather illogical traverse and the approved rules of pleading, and to compel parties litigant to make their issues by opposing an averment of a fact with a denial of the averred fact, instead of opposing the averred fact by a denial of the liability which may be inferred from the fact. The general denial, to be correct as a pleading, should contain precise, certain, and substantial denials; and when this is done it is none the less clear in its application to each adverse allegation than it would be if the allegations were repeated in detail, and a formal denial made to each of them.

In this respect it is unlike the general issue, which is a mere negative of the result of plaintiff's averment, taken collectively, involving only a denial of their united legal effect. For instance, the general issue, in an action of replevin, was the plea of *non cepit;* in detinue, *non detinet;* in debt on bond or other specialty, *non est factum;* in assumpsit, *non assumpsit;* in trespass, not guilty. The last plea extended was in this form: "And the said defendant says he is not guilty of the said trespass above laid to his charge, or any part thereof, in manner and form as the said plaintiff hath complained, and of this he puts himself on the country." The slightest reflection will enable one to discern the difference between these pleas and the general denial. The point intended to be made is (1) that as pleas they are radically different from each other; and (2) that, even if they were the equivalents of each other, matter of justification cannot be given in evidence under them, either at common law or under the Code. Indeed, the language of the Code would seem to settle the question: "The answer shall contain (1) a general or a specific denial of each material allegation; * * * or (2) a statement of any new matter constituting a defense, counter-claim, or set-off." Now, if matter of avoidance can be given in evidence under the general traverse, what need is there of any other form of answer? Why did not the legislature eliminate from the second paragraph the word "defense," so that it might read, "a statement of any new matter constituting a counter-claim or set-off?" The supreme court of Massachusetts in Mulry v. Insurance Co., 5 Gray, 541, has thus formulated the rule: "Whenever a defendant intends to rest his defense upon any fact which is not included in the allegations necessary to the support of the plaintiff's case, he must set it out in clear and precise terms in his answer; and as the plaintiff is not bound to aver anything which tends to defeat his action, or which shows that his claim is illegal or void in its inception or otherwise, all such matters must be

set out and averred in the answer." Unless the defendant has stated a matter of defense in his answer, he cannot take advantage of it, though disclosed by plaintiff's testimony. In discussing this subject, Bliss, Code Pl. § 327, states the rule thus: "The true rule is, as will hereafter be more fully shown, that, under a denial, the defendants should be permitted to show no fact that does not go to disprove the fact denied. Evidence of facts which admit the act charged, but which avoid its force or effect, or which discharge the obligation, is inadmissible; but, on the other hand, facts may be proved, although apparently new matter, which, instead of confessing or avoiding, tends to disprove those alleged by the plaintiffs." "A general traverse under the Code authorizes the introduction of no evidence on the part of a defendant except such as tends directly to disprove some fact alleged in the complaint." Benedict v. Seymour, 6 How. Pr. 298. "The general rule on this subject is that any fact which avoids the action, and which the plaintiff was not bound to prove in the first instance in support of it, is new matter." State v. Williams, 48 Mo. 210. It thus appears that, under the scope of a general denial, a defendant may, without specially pleading them, give evidence of facts which tend to disprove the facts alleged by his adversary.

Now, what facts are alleged by the plaintiff in this case? They are these: His imprisonment; the duration of it; the instigation of it by the defendant; the amount of money expended by him to obtain a restoration to liberty. The averment that the imprisonment was unlawful, or without right and authority, although a proper averment, is not an allegation of fact. It is a mere characterization of the injury complained of. So it results, under the rule, that by his general denial the defendant could give evidence of any fact which controverted either one or all of the opposing facts, but the permission goes no further. Let another test be applied,—the test of the rule laid down by the supreme court of Missouri, cited supra. I suppose it will be conceded that, in the opening of his case, all that is required of plaintiff is to submit such evidence as will make a *prima facie* case. In an action of false imprisonment, what makes a *prima facie* case? Simply the imprisonment, and the defen-

dant's connection with it. It is true that false imprisonment is a mixed question of law and fact. Whether there was a detention of a party against his will is a question of fact. Whether the authority under which it was effected was lawful or not is a question of law. But all the plaintiff need do in the first instance is to prove the imprisonment. The action is unlike the civil action to recover damages for malicious prosecution. The first is trespass; the latter is case. In the latter, the plaintiff must both allege and prove malice and want of probable cause. They are the gist of the action. The failure to prove either would authorize a nonsuit. In trespass for false imprisonment neither malice nor want of probable cause need be either alleged or proved. They are not the gist of the action. In the language of Lord Mansfield in Johnstone v. Sutton, 1 Term R. 544: "There is no similitude or analogy between an action of trespass or false imprisonment and this kind of action. An action of trespass is for the defendant's having done that which, upon the stating of it, is manifestly illegal. This kind of action is for a prosecution which, upon the stating of it, is manifestly legal." Take for illustration the action of slander. While it is usual for the plaintiff to allege good character, and necessary to allege that the words were falsely spoken, he is not permitted to prove character in the first instance, nor need he prove the untruthfulness of the words in the first instance. His *prima facie* case is made by proving simply the utterance of the defamatory language. If the defendant desires to prove the truth of the words, he cannot do so under a general denial, although the plaintiff in his petition has averred that they were false. The truth of them can only be proven under a plea of justification. In an indictment for false imprisonment, to maintain it the prosecutor must prove the imprisonment. "But all the prosecutor has to prove is the imprisonment, for that is presumed to be unlawful until the contrary is shown. It is for the defendant to justify it by proving that it was lawful." 2 Archb. Crim. Pr. & Pl. 94.

Now, the logic of the situation is that, since Bachman was not required in the first instance to prove anything but the imprisonment, the mere denial of his adversary did not put in issue any question of legal author-

Wolcott v. Bachman.

ity, for, if it had, Bachman would have been required to offer proof on that subject in advance, and such proof, beside, as would have given him a *prima facie* standing on that branch of the case,—a requirement which, as a proposition of law, is lacking in the support of any respectable authority.

I desire now to present an objection to defendant's answer which goes to its sufficiency as a pleading in the case under consideration. The petition, in substance, charges that the defendant caused plaintiff to be imprisoned in the county jail for the space of 30 days, without any cause whatever, and without any right or authority to do so. To this the defendant pleads the general denial already quoted. Now, here is one indivisible charge of imprisonment for 30 days without authority. In grammar one may so analyze it as to separate it into propositions, but in the science of pleading the allegation is a unit. The defendant, in effect, says: "I deny that I caused you to be imprisoned in jail thirty days without authority." This is surely the true import and effect of the answer, which simply denies each allegation. To show the defect of the plea, is anything further needed than its bare statement? What does it deny? Is it the imprisonment, the duration of it, or the want of authority? There occurs to me the familiar illustration of where the defendant pleaded, in an action of trespass, that the plaintiff's daughter gave him license to enter the house, and he did so by that license. The plaintiff replied that defendant did not enter by that license. This was held to be a negative pregnant, and that the plaintiff should have traversed the entry by itself, or the license by itself, and not both together; for the traverse might imply that a license was given, though the defendant did not enter by that license. It was therefore pregnant with an admission that the license was given, although the license was not expressly admitted; and the effect was to leave it in doubt whether the plaintiff meant to deny the license, or the entry by virtue of the license. So it is here left in doubt whether Wolcott meant to deny the imprisonment, or to admit it, and deny that it continued 30 days. "This imperfect traverse [the negative pregnant] is sometimes seen where one is called on to answer an allegation of several facts connected by the copulative conjunction, and he answers or replies denying them *in hæc verbis*, which admits that some of the facts may be true. There is no traverse of any one fact, but of the whole, as connected or happening together. But the negative pregnant is oftener seen when the statement contains an allegation of a contract or transaction as made or happening upon a day named, when time is immaterial and the traverse covers the day. In such case, it is doubtful whether the party intends to deny the date merely, or the act or transaction. It is treated as a denial of the former, and the denial is pregnant with the admission of the latter, and hence there is no good issue. "Notwithstanding the provision of the Code requiring the courts to be liberal in its construction,—a provision sometimes ignored altogether, and sometimes made an excuse for tolerating great looseness and irregularity,—there is a special reason, in states in which it is necessary to make oath to pleadings, why a negative pregnant should not be tolerated. No one could be convicted of perjury who should swear to such a denial, as it is uncertain what fact he intended to deny." Bliss, Code Pl. § 332. It was not at all material to plaintiff's right of recovery whether he was imprisoned one day or 30 days. The duration affected only the *quantum*, not the right, of recovery. It is but the veriest truism to say that the object of an answer is to present a defense. It might have been true in fact that plaintiff was imprisoned but 29 days, and so the defendant, knowing this, might have denied the length of the confinement, but such denial would not have presented a defense.

The answer is faulty in this further respect, that it is a denial of a legal conclusion. The defendant denies that he caused plaintiff to be imprisoned without authority. This is clearly erroneous, and is not allowed by any system of pleading. In making an issue, the defendant must controvert a statement of a fact, and has nothing to do with a legal conclusion.

It seems idle to enlarge further on these questions. I have been led to do so to this limited extent on account of what seems to me to be an abuse of pleading which has grown up in the courts of the territory, and chiefly the abuse of the general denial. It must be apparent that it is not infrequently used as a sham pleading, and that there is a

First Nat. Bank v. Swan.

liability under the prevailing practice to use it as a device to defeat a just cause by interposing a denial in such form as that an indictment for perjury cannot reach the offender. In discussing the general denial, Judge HOAR, of Massachusetts, is quoted as saying: "We can imagine that so concise and comprehensive a form of denial, if commonly adopted, might lead to abuses, and are not surprised to find a difference of opinion as to its admissibility existing among judges at *nisi prius*. If any attorney should adopt it where he was not instructed by his client that there were sufficient grounds to contest all the averments to which it would apply, the practice would be highly censurable and inconsistent with professional duty. It would also be in the power of the court, where there could be any doubt as to the facts thus put in issue, to require, upon the plaintiff's motion, a more exact and detailed answer, or to postpone the trial on the ground of surprise." Submarine Co. v. Burnett, 1 Allen, 411. I do not question that a general denial may be a good plea when it presents a complete and unambiguous traverse of an opposing allegation. But the instances are many where this is impossible. The averments of the petition are quite often and necessarily accompanied by a statement of the way, the manner, the time, or place in which the act complained of, or the transaction relied upon, was done. In such cases, a general denial, if of the form here adopted, would be necessarily defective. And yet the incautious pleader, though he may have a perfect defense, having his mind fixed upon the liability sought to be imposed on him, denies legal conclusions, instead of the facts from which the conclusions flow.

Entertaining the opinions herein expressed, I differ very widely, of course, from my associates. If I had any reason, from an inspection of the record, to believe that Justice WOLCOTT was actuated by a sincere, though mistaken, opinion, that he was pursuing a legal course in his harsh treatment of the plaintiff, I might not perhaps have felt it to be a duty to emphasize my dissent by a written opinion. I have never felt favorably disposed to that rule of law which distinguishes between a court of superior and a court of inferior jurisdiction, in respect of the responsibility which attaches to the incumbent of the one, and from which the incumbent of

the other is freed. But since the proof shows incontestably that the defendant acted, not only without jurisdiction, but that he did so consciously, defiantly, and against better advice, I think that public interest demands that he should be made to feel the hand of the law.