## RIORDAN ET AL. v. HORTON ET AL.

APPEAL AND ERROR—PETITION IN ERROR—AMENDMENT—ASSIGNMENT
OF ERROR—CONSTRUCTION OF STATUTE LIMITING TIME FOR BRINGING
PROCEEDING IN ERROR—CONFLICTING EVIDENCE—RECEIVERS—COM-
PENSATION—WAIVER—PREMATURE ALLOWANCE—WAIVER OF QUES-
TION NOT RAISED IN BRIEF.

1. There being no statute specially regulating amendments in
proceedings in error, the matter of such amendments should
by analogy be determined as near as may be according to
the provisions of the civil code with reference to amend-
ments of pleadings and proceedings in district courts.

2. By analogy to the provisions of the civil code forbidding an ·
amendment of a pleading changing substantially the cause
of action, an amendment of a petition in error by substitut-
ing a different judgment for the one originally complained
should not be permitted.

3. The judgment complained of being erroneously referred to
in the petition in error as rendered at the "March term,"
but being otherwise sufficiently identified, and the record
disclosing but one judgment which was rendered November
20, 1905, and a motion for new trial which was submitted
and decided at the following March term of the trial court,
it is proper to permit an amendment by inserting the true
date and term of the judgment.

4. The period having elapsed within which an original petition
in error could be filed, an amendment is not permissible
substituting as a ground of error the overruling of the
motion of plaintiffs in error for a new trial in place of an
allegation "that the court erred in overruling the motion of
plaintiffs in error in said cause."

5. A party may assign as error one or more grounds embraced
in the motion for new trial, and thereupon be entitled to
have those matters reviewed, without specifically assigning
as error the overruling of the motion for new trial.

6. As to all matters which must or should be embraced in a
motion for new trial as a condition to their consideration on
error, the statute limiting the time for bringing proceedings
in error begins to run from the date of the ruling upon the
motion for new trial.

7. The evidence being conflicting as to whether a receiver, who
was a stockholder of the concern placed in his charge, had

agreed, in order to obtain the consent of the other stockholders to his appointment, to give his services as receiver without compensation, the finding of the trial court that he was entitled to compensation will not be disturbed.

8. There being no statute fixing the fees or compensation of receivers, a statement filed by a receiver at the time of his appointment waiving the statutory fees and consenting to abide the order of the court or judge as to the amount of his compensation does not deprive him of the right to receive any compensation, but, in connection with evidence that a supposed statutory fee of ten per cent was agreed by the receiver when appointed to be excessive, its effect is to limit the compensation to what may be reasonable and just, the same in no event to equal or exceed a commission of ten per cent.

9. A question not raised in the brief of plaintiff in error will be deemed to have been waived or abandoned.

10. Though partial allowances from time to time for services rendered are proper, neither the whole nor any part of the compensation of a receiver accrues or becomes a charge upon his trust until the services have been rendered, and an order entered before final report showing a settlement of all matters intrusted to the receiver fixing the amount of his compensation as in full for all services rendered and to be rendered is premature, and therefore erroneous.

11. A stockholder of a bank having been appointed receiver thereof, with the consent of the other stockholders, upon the understanding that when the work was completed the court would fix a reasonable fee for his services, which should depend as to amount upon the outcome of the bank's affairs, *Held,* that though such understanding would not preclude the court from allowing partial compensation from time to .time for services rendered less than the value thereof, to allow him his entire compensation prior to his performance of the required services and the approval of his final report would be unfair to the stockholders, independent of the general rule forbidding an allowance before the services are performed.

[Decided March 9, 1908.] . (94 Pac., 448.)

Error to the District Court, Weston County, Hon. Carroll H. Parmelee, Judge.

The material facts are stated in the opinion.

*Metz, Sackett & Metz* and *N. K. Griggs,* for plaintiffs in error.

It is proper to permit the petition in error to be amended as to any matter contained in the record, proper to be considered on error.    (R. R. Co. v. Ingalls, 13 Neb., 279; Spencer v. Thistle, 13 Neb., 201; Robinson v. Kilpatrick, 50 Neb., 795; Hildebrant v. Brewer, 5 Tex., 566; Ry. Co. v. Bailey, 7 O. St., 88; Humphries v. Spafford, 14 Neb., 488; Bazzo v. Wallace, 16 Neb., 293; Scott v. Spencer, 44 Neb., 93; Darries v. Darries, 58 Mo., 222.)

The receiver's compensation could not legally be allowed without notice to the plaintiffs in error, the parties chiefly interested as owners of a majority of the capital stock of the bank.    (Alderson on Rec. (Ed. 1905), 859; Bank v. Crysler, 67 Fed., 388, 390; Jorelman v. McPhee, 76 Pac, 922; Hayden v. Trust Co., 55 Ill. App., 241; Bank v. Frankenthal, 55 Ill. App., 400.)    The proper time for the allowance of compensation is at the close of the receivership; and until that time full compensation will not be made, and the allowance will not be made without proof. (Maxwell v. Mfg. Co., 82 Fed., 214; *In re* Pelican Saw Mill Co., 19 So., 686.)

In view of the evidence as to the understanding of the parties at the time of Horton's appointment, the allowances were excessive in the extreme.    The evidence strongly supports the theory that he was to receive no compensation, and that would be the usual rule, since he was a stockholder and volunteered his services.    (O'Brien v. Harriman, 1 Tenn. Ch., 467; Barry v. Jones, 27 Am., 742; *In re* Cooper, 93 N. Y., 507; *In re* Hopkins, 32 Hun, 619; *In re* Hodgeman's Est., 35 N. E., 660; Bassett v. Miller, 8 Md., 551; Walford v. Powers, 85 Ind., 294; Soc. v. Brumfield, 102 Ind., 146; Kellar v. Orr, 106 Ind., 406; Polk v. Johnson, 65 N. E., 537; Steel v. Halladay, 25 Pac., 77; Ross v. Conwell, 34 N. E., 752; *In re* Mulligan's Est., 27 Atl., 398; 12 Ency. L. (2d Ed.), 1286; Beach on Trustees, Sec. 748; *In re* Est. of Davis, 4 Pac., 22; Bate v. Bate, 11 Ky., 639;

McCaw v. Blewit, 2 McCord's Eq., 90.) But upon the theory that he was entitled to full compensation the amount allowed is excessive. (Schwartz v. Oil Co., 25 Atl., 1019; Spears v. Thomas (Ky.), 70 S. W., 1060.)

*Stotts & Blume,* for defendants in error.

The assignments of error are not sufficiently definite to be considered. (2 Ency. Pl. & Pr., 942, 955, 956; Parish v. St. Paul (Minn.), 87 Am. St., 374; Gude v. Dakota, &c., Co. (S. D.), 58 Am. St., 860; Slotz v. James (Ia.), 59 Am. St., 348; Churchill v. White (Neb.), 76 Am. St., 64; Main v. Main (Ariz.), 60 Pac., 888; Wisler v. Lawler (Ariz.), 62 Pac., 695; Warl v. Sherman (Ariz.), 64 Pac., 434; Barry v. Barry (Kan.), 59 Pac., 685; Dewade v. Miera (N. M.), 61 Pac., 125; Green v. Gibson (Tex.), 18 S. W., 494; Lamance v. Byrnes, 17 Nev., 197; Dennis v. Coughlin (Nev.), 58 Am. St., 761; Lathrop v. Tracy (Colo.), 65 Am. St., 229; Dill v. Marvin (Fla.), 79 Am. St., 171; Miller v. State, 3 Wyo., 657; 29 Pac., 136; Charolean v. Shields et al (Ariz.), 76 Pac., 821; Whitacre v. Nichols (Okla.), 87 Pac., 865.)

The judgment complained of is not identified by the petition in error, and this is necessary. (Merly v. Boulon, 104 Cal., 262; Allport v. Kelly, 2 Mont., 343; Bishop v. Owens (Cal.), 89 Pac., 844; Board v. Shaffner, 10 Wyo., 181.)

The filing of petition in error is jurisdictional, and to permit the amendment requested would be doing indirectly what could not be done directly. No errors not now properly before the court can be considered. (Smyth v. Boswell (Ind.), 20 N. E., 263; Jarvis v. Chase County (Neb.), 97 N. W., 831; Deuch v. Seaside Lodge, 26 Ore., 385; 2 Ency Pl. & Pr., 239-245; Crawford v. Kansas City, 45 Kan., 474; Cogshall v. Sperry, 47 Kan., 448; 28 Pac., 154; Nowland v. Horace, 8 Kan. App., 722; 54 Pac., 919; Brewer v. Moyer (Kan.), 84 Pac., 719; Smetters v. Ramey, 14 O. St., 287; Burke v. Taylor, 45 O. St., 444; Dolph v.

Nickum, 2 Ore., 202; Cook v. Challis (Kan.), 40 Pac., 643; Lavalle v. Skelly, 90 N. Y., 549; Arkansas v. Ry. Co. (Mo.), 80 S. W., 336; Bank v. Wells (Cal.), 90 Pac., 981; Ass'n. v. Wilkins, 71 Cal., 626; 12 Pac., 798; Hastings v. Halleck, 10 Cal., 31; Koutnick v. Koutnick, 196 Ill., 162; Fry v. Bennett, 7 Abb. Pr., 352; 16 How. Pr., 385; Piper v. Van Buren, 27 Hun, 384; Patterson v. McCunn, 38 Hun, 531; Baden v. Bertenshaw, 68 Kan., 32; James v. Higginbotham, 60 Neb., 203; Painter & Co., 7 Ind. App., 642; Cannon v. Cannon, 66 Tex., 682; Evans v. Printing Co., 4 Tex. Civ. App., 327; Blecker v. Shoff, 83 Ia., 265.)

Unless the motion for new trial is assigned as error no errors embraced or that should be embraced in such motion can be considered.   (Martin v. Cassert (Okla.), 37 Pac., 586; Beal v. Ins. Co., 7 Okla., 285; Douglas Co. v. Sparks, 7 Okla., 259; Crawford v. Kansas City, 45 Kan., 474; McPherson v. Manning, 43 Kan., 129; Landauer v. Hoagland, 41 Kan., 520; Clark v. Schnur, 40 Kan., 72; Carson v. Frink, 27 Kan., 524; Binn v. Adams, 54 Kan.. 615; Coffeyville v. Dolley (Kan.), 84 Pac., 719; Turner v. Franklin (Ariz.), 85 Pac., 1070; Lemon v. Ward, 3 Ariz., 219; James v. Higginbotham, 60 N. W., 203; 82 N. W., 625; Beckwith v. Dierks L. Co. (Neb.), 106 N. W., 442; Doorley v. Buford (Okla.), 49 Pac., 936.)

Where the appeal is taken more than one year after the rendition of the judgment, and the motion for new trial is not assigned as error, the judgment is not reviewable. (Crawford v. Kansas City, 45 Kan., 474; Dyal v. Topeka, 35 Kan., 62; Osbourne v. Young, 28 Kan., 769; Shattuck v. Board, 63 Kan., 849; Mech. Savings Bank v. Harding, 65 Kan., 655; Blockwood v. Shaff (Kan.), 24 Pac., 423; McCrea v. McCrew, 9 Idaho, 382; Smith v. State, 48 Ark., 149; Dowty v. Pepple, 58 O. St., 395; Young v. Schallenberger, 53 O. St., 291.)

The evidence does not sustain the proposition that the receiver was to receive only a nominal compensation.  The

objection that the allowance was made upon an *ex parte* hearing is overcome by the fact that the complaining parties were afterwards given a hearing upon their application. The amount to be allowed a receiver is to be determined by the court, and the matter rests in its discretion. (State v. Bank, 61 Neb., 496; Bank v. Badger (Wis.), 79 N. W., 21; Ford v. Ford (Wis.), 59 N. W., 464; *In re* Bank, 57 Minn., 361; Cake v. Mohunn, 164 U. S., 311.) Upon the evidence the amount allowed was no more than was reasonable.

Scott, Justice.

This matter arose in the district court of Weston County and involves the validity of an order fixing and allowing Fred Horton certain amounts for compensation as receiver of the Bank of Newcastle. Plaintiffs in error as stockholders of the bank complain that the amounts so allowed were excessive and unwarranted, and bring the case here on error.

1. The defendants in error move to dismiss the proceedings in error on the following grounds:

First—That they were not brought within one year after the rendition of the judgment.

Second—That the petition in error does not give the date of any judgment, and, therefore, fails to specify or identify the judgment complained of.

Third—That if any judgment at all is complained of in the petition in error, it must be a judgment rendered in November, 1905, and the proceedings in error were not instituted within one year from the rendition of that judgment.

The petition in error is as follows: "Comes now the plaintiffs in error, and say, that at the March term of the district court of the Fourth Judicial District in and for Weston County, Wyoming, the defendants in error recovered judgment by consideration of said district court, against the plaintiffs in error, in that certain action pending

therein, entitled as follows:   'In the matter of the receivership of the Bank of Newcastle' and 'Mike Riordan, plaintiff, and W. H. Kilpatrick, R. J. Kilpatrick and Samuel D. Kilpatrick, co-partners under the name and style of Kilpatrick Brothers, interventors, vs. The Bank of Newcastle and Fred Horton, as receiver of the Bank of Newcastle, defendants.'

"That there is manifest error in the record of the proceedings in the trial of said cause.

"That the court erred in overruling the motion of plaintiffs in error in said cause, and in rendering judgment therein in favor of the defendants in error and against the plaintiffs in error, and in its findings of fact and conclusions of law therein.   That said findings and judgment are contrary to law and the evidence.

"Plaintiffs in error, therefore, pray that said judgment be reversed and that they be restored to all things they have lost by reason thereof.

"That this court direct the clerk of said district court to forward all original papers and files in said cause and all journal entries made therein, deemed necessary by this court to a full understanding and investigation of said cause and that petitioners have their costs herein."

The plaintiffs in error oppose this motion and ask permission to amend the petition by making it more definite and certain as to the term at which the judgment complained of was rendered and also by inserting after the words, "That the court erred in overruling the motion of plaintiffs in error,' the words, "for a new trial."   The right to so amend is vigorously contested.

We have no statute specially regulating amendments in proceedings in error.   Such amendments by analogy, we think, should conform as near as may be to the provisions of the statute with reference to amendments of pleadings and proceedings in the district courts.   Under those provisions no amendment is authorized which will change substantially the cause of action.   In such a case it would

amount virtually to an abandonment of one cause of action for a new or different one. So upon error one would not be permitted to substitute a different judgment for the one originally complained of. In the case before us the petition in error refers to the judgment as having been rendered at the March term of the district court of Weston County, whereas the record discloses that no judgment in the cause was rendered at a March term of that court. The record does show that a judgment was rendered in this cause on November 20, 1905, and that a motion to vacate that judgment and grant a new trial was filed in due time and that it was submitted to and decided by the court at the following term on March 5, 1906. No question is made that the record returned in pursuance of the order of this court is other than the record of the case and proceeding here sought to have reviewed, and the cause and the court in which the judgment was rendered having been set out in the petition, and the record disclosing but one judgment in the cause precludes, in our view, the possibility of the parties being misled as to what judgment they were called upon to defend in this proceeding. In Commissioners v. Shaffner, 10 Wyo., 181, 189, this court said: "A petition in error should with reasonable certainty describe the cause wherein it is claimed that errors have occurred and the judgment sought to be reviewed ought to be indicated by some certain description. A statement of the cause wherein the judgment was rendered and the date of its rendition should be embraced in the petition. We do not hold that a statement of the date of the judgment is indispensable, if it is otherwise clearly identified and described." We are of the opinion that the judgment of which complaint is here made, though erroneously referred to as having been rendered at the March term, is otherwise sufficiently identified by the petition in error to give this court jurisdiction, and for this reason the proposed amendment is not inhibited and that permission to amend the petition by inserting the true date of the judgment and term of the district court in place of the words "at the March term" should be granted.

The second proposed amendment, viz.: to change the words, "That the court erred in overruling the motion of plaintiffs in error in said cause," so as to read, "That the court erred in overruling the motion of plaintiffs in error for a new trial in said cause," ought not, in our judgment, to be permitted. It is not necessary to assign the overruling of a motion for a new trial as error unless it is desired to have reviewed all matters embraced in such motion without further assignment, though it is usual, customary and the better practice to do so (Wolcott v. Bachman, 3 Wyo., 335), and this court will not review errors which are properly grounds for a new trial unless they have been presented by such motion and an adverse ruling made thereon. A party may assign as error one or more grounds embraced in the motion for a new trial and be entitled to have these matters reviewed even though the overruling of the motion for a new trial is not specifically assigned as error.

In this case, aside from the complaint that there has been an adverse ruling upon some motion, the plaintiffs in error complain that the court erred (1) in rendering judgment in said cause in favor of the defendants in error and against the plaintiffs in error, and (2) in its findings of fact and conclusions of law, and (3) that said findings and judgment are contrary to law and the evidence. These alleged errors were incorporated in and were some of the grounds of the motion for a new trial, and the record shows that the motion was ruled upon by the court, and to such ruling exception was duly taken. The time has long since elapsed within which an original petition in error could be filed in this cause. The proposed amendment would not in fact be an amendment to a defective assignment, but would in effect bring into the record matters which are not included within the assignments of error. Such a practice could not be permitted after the time allowed by statute for the commencement of proceedings in error had elapsed.

It is urged that the proceedings were not commenced within one year from the rendition of the judgment, as

provided by Chapter 28, Session Laws 1901. This statute was construed by this court in Conradt v. Lepper, 13 Wyo., 473. It was there held that the statute begins to run from the date of the ruling upon the motion for a new trial as to all matters which must or should be embraced in such motion. Applying that rule to the case before us, the record shows that the petition in error was filed within the year after the ruling upon the motion for a new trial.

For the foregoing reasons the motion to dismiss the proceedings in error is denied.

2. It is contended that Horton, being a stockholder of the bank, volunteered his services as receiver free of charge, in order to obtain the consent of the other stockholders to his appointment, and was not, therefore, entitled to ask or receive any compensation for such services.

. It may be conceded that in the absence of consent of the parties interested he was not eligible to the appointment, and it may also be conceded that if he obtained their consent by representations on his part and relied upon by them that he would perform the services gratuitously that he would not be entitled to compensation therefor. (12 A. & E. Ency. L. (2d Ed.), 1286; Beach, Trustees, Sec. 748.)

The evidence as to the understanding between him and the stockholders upon this question is conflicting. H. V. Raynor testified that Horton said he was willing to accept the receivership and. do it for a nominal compensation for the judge to name after the appointment. V. A. Deatkin says the understanding with Horton was that he was to have a reasonable consideration. Riordan testifies that Horton said that on account of his being a stockholder he was willing to offer his services free of charge. D. A. Fakler, the court commissioner of Weston County, says that Judge Stotts directed him to make the appointment and to include or state in the order of appointment that Horton waived the statutory fee. N. K. Griggs and R. J. Kilpatrick testify that Horton told the latter that if appointed he would act for a very nominal consideration. Isaac Frank

says that Horton told him he would be glad to act as receiver and would be glad to do so for $150.00 per month. That he, Frank, consented on the part of the stockholders whom he represented and thought most of the stockholders did the same.   W. H. Kilpatrick testified that he and his brother consented to the appointment with the understanding that Dr. Horton was to receive only a nominal consideration for his services.

At the time Horton was appointed receiver he signed and filed a statement or so-called waiver of statutory fee, which statement, omitting the caption and signature, is in the words and figures following: "Comes now Fred Horton and files contemporaneous with an order issued by Hon. David A. Fakler, court commissioner within and for the County of Weston, in the State of Wyoming, appointing the said Fred Horton receiver of the Bank of Newcastle, a corporation, a waiver of the statutory fees as such receiver, and consents and hereby agrees to abide by the order and judgment of this court as to the amount of compensation he, the said Fred Horton, shall receive as such receiver and hereby agrees and consents to accept such compensation as the court or judge may fix and determine upon as full compensation for such services, and the statutory fee is hereby forever waived."

Horton testified that he, as well as the others, understood that the statute fixed a fee of ten per cent as compensation to the receiver and it was thought this would be too much; that he never heard of the question of his performing the services for $150.00 per month as testified to by the witness Frank, and that he did not volunteer his services free of charge, but, on the contrary, he said he would and did waive the supposed statutory fee, as his written statement so made and filed says.   That he expected and was entitled to a reasonable compensation for his services to be fixed by the court or judge.   In this he was corroborated by the witness Deatkin, who, as above stated, testified that the understanding was that he should have a reasonable compensation.

This evidence being conflicting, the finding of the court thereon against the contention of the plaintiffs in error ought not to be disturbed on this ground. There is no statute fixing the compensation of receivers, and the parties seem to have been laboring under a misapprehension in that respect. We think, however, that the effect of the so-called waiver and the evidence in connection therewith is to limit the amount of compensation of the receiver to what may be reasonable or just and that in no case can it equal or exceed ten per cent commission or, as Horton testified, five per cent for moneys collected and five per cent for moneys paid out. His own testimony is that in the conversation he had with the stockholders of the bank in regard to this matter he represented that this would be excessive for the amount of property involved. Having so represented to the stockholders and obtained their consent to his appointment, he is bound thereby.

3. It is urged that the judgment is contrary to law and the evidence. The record here presented shows that Horton was appointed and qualified as receiver of the Bank of Newcastle on March 17, 1904, in a suit instituted by the state on the relation of the attorney general to dissolve the bank under the provisions of Section 3101, Revised Statutes 1899. On September 5th of that year, upon his petition and application therefor, the court made an order allowing him partial compensation for services as such receiver in the sum of $1,500. On December 30th following, the court approved a current report of the receiver and upon his petition and application therefor made and entered an order in words and figures as follows, to-wit: "The court having read the report filed December 30, 1904, of the said receiver and being fully informed and advised in the premises, it is ordered, that the same is in all things confirmed, and each and every act of said receiver hereby approved. It is further ordered by the court, that said Fred Horton, receiver aforesaid, be allowed to retain out of any moneys now in or coming into his hands belonging

to the said Bank of Newcastle, the sum of $7,716 as his full compensation as provided by law for services as said receiver, the court being of the opinion that said sum is equitable and just."

This order was made *ex parte* and the report showed that the creditors of the bank had been paid in full. After the expiration of the term at which these orders were made and on August 7, 1905, Riordan, a stockholder in the bank, having been granted permission to do so, commenced a suit against the bank and its receiver to vacate the orders fixing and allowing compensation to the receiver on the ground that they were wrongful and unlawful, *ex parte*, granted without notice or an opportunity to be heard, without jurisdiction, obtained by fraud and grossly excessive. On September 5th, following, Kilpatrick Bros., who also held stock in the bank, were permitted to file their petition in intervention, in which they attacked the validity of the orders upon the same grounds. On September 8th, 1905, the receiver filed a current report showing his collection and disbursements, and which showed credit in full to himself under the order of September 5, 1904, of $1,500 and credit to himself of a part of the sum allowed him in and by the order of December 30, 1904. On November 9, 1905, the plaintiffs in error filed their joint motion to strike parts of the report of September 8, 1905, and also joint exceptions to the items complained of. The case and exceptions came on for trial on November 9, 1905, and the court ordered that in so far as the questions were in common to the plaintiffs in error that they should be consolidated and tried together and that the judgment should be binding as to both parties. These questions involved the validity of the orders fixing the compensation of the receiver and the amounts allowed for attorney's fees. The case and exceptions were so tried and the court refused to sustain the exceptions and by its decree recites that: "The court further finds from the evidence that the sum of seven thousand seven hundred and sixteen dollars allowed

by order of this court December 30th, 1904, as compensation for the services of said receiver, was and is the full sum to be received in payment for services of said receiver to and including the final settlement and report of all matters intrusted to him as such receiver." This decree was rendered on November 20, 1905. A motion for a new trial was filed in due time, which was heard and decided on the first day of the next ensuing term of the court, to-wit: March 5, 1906. The petition in error was filed in this court on January 16, 1907.

The duties of the receiver as provided by Section 3101, *supra,* under which the receiver was appointed, was to take charge of the property and assets of the bank and dispose of the same under the direction of the court and from the avails thereof to pay or cause to be paid all costs and expenses of the court, including the receiver's proper charges and expenses in disposing of the property, and distribute the remaining assets as follows: "First, he shall pay the liabilities of the bank in full, if the funds are sufficient for that purpose, and if insufficient, then in *pro rata* proportion. Second, after paying the liabilities of the bank in full, the remaining assets shall be divided among the shareholders *pro rata* according to the number of shares held by each."

The defendants in error are the Bank of Newcastle and Fred Horton, as receiver of the Bank of Newcastle, and the judgment referred to and complained of is one alleged to have been recovered "in the matter of the receivership of the Bank of Newcastle." Enough of the record of the receivership is before us to show that the receivership was and is still pending, that no final report has been made therein, and that there is still property in the hands of the receiver of considerable value, and matters still unsettled by him.

No question is raised in plaintiff in error's brief as to the validity of the allowance for attorney's fees, and that question will be deemed to have been waived or abandoned (Boswell Adm'r., &c., v. Bliler, 9 Wyo,. 277; Horn v.

State, 12 Wyo., 80), and for that reason need not here be considered.

The question here raised goes to the validity of the order of December 30, 1904, finally determining the amount of compensation of the receiver. It will be observed that this order as construed by the lower court is an allowance of compensation for services rendered, and to be rendered up to and including the final report. It does not purport nor was it so understood by Horton to be a partial compensation, but it fixes the entire compensation and authorizes the present payment for services, part of which have not yet been rendered; nor does it show how much is for services rendered or how much is for services to be renderd. The power of the court in such matters is to authorize payment from the trust fund for necessary expenses, including the compensation of the receiver. Such compensation may be by partial allowance for services rendered from time to time, on a *per diem* basis, monthly or at stated intervals, a percentage basis, or a lump allowance upon final settlement, depending to some extent no doubt upon the circumstances of the case, but in no case which has come under our observation or been cited to our attention has the total amount of the compensation of the receiver been fixed at the commencement or at any time during the administration of the trust and prior to final report showing the settlement of all matters intrusted to him. Such compensation in part or in whole does not accrue and become a charge against his trust until the services have been rendered, nor could the court fix a reasonable and just compensation for contemplated services of this kind, for evidence of skill, time employed, and the difficulty in marshaling the assets must be taken into consideration in passing upon that question. Further, in case of death or removal of a receiver before the trust was closed and after such an order had been made and he had credited himself with the full amount, or whether he had done so or not, his successor would have to look to the court and would be

entitled to compensation for services rendered by him. The law does not contemplate that the services should be paid for twice or that the insolvent estate should be put to additional expense of litigation in the way of an accounting and recovery of unearned compensation either against the receiver if removed or his representative in case of death.

In Attorney General v. North Am. Life Ins. Co., 89 N. Y., 94, the superintendent of the insurance department upon the rendition of a current report of the receiver and application therefor fixed the compensation of the receiver at five per. cent upon the money already in and to come into the hands of the receiver. The court said: "Sufficient reasons have been assigned for directing a reconsideration by the insurance department of its order fixing the compensation of the receiver in this action at five per cent upon the amount of assets of the company which should come into his possession. That order was premature. It was made before the services of the receiver had even approached completion; before commissions were earned or payable; when it was not certain that the officer would complete his duties; when the amount of care and labor required could only be estimated and could not be known, and when any just ground of judgment was hidden in the uncertainties of the future."

In Maxwell v. Wilmington Dental Mfg. Co., 82 Fed., 214, it is said: "The proper time for the final allowance of compensation for a receiver obviously is at the close of the receivership. Unless the receivership be practically at an end, any such allowance is premature. * * * Where a receiver of an insolvent corporation is clothed with the duty of winding up its affairs with all convenient speed, sound policy requires that partial or intermediate allowance of compensation for the receiver should be materially less than the worth of the services rendered by the receiver prior to the making of such allowance; and that the final allowance made at the close of the receivership should be so adjusted that the receiver will have fair and just com-

pensation for his services as a whole, notwithstanding the inadequacy of the partial or intermediate allowances considered by themselves.  Such a practice inures to the benefit of creditors and stockholders through its tendency to secure a reasonably prompt settlement of the affairs of the corporation, and a consequent curtailment of the expenses of the receivership.  It is also calculated to insure the allowance to the receiver of such, and only such, compensation as shall be fair and just, as well to the creditors and stockholders as to the receiver."

In People, &c., v. Anglo-American S. & L. Ass'n., 107 N. Y. (App. Div.), 94 N. Y. Supp., 1113, it is held that there is no objection to the allowance to a receiver of fees which have been earned, and that it might be a great hardship to withhold such fees until a final accounting and that an order granting fees already earned with a reservation of the right to review such order upon final accounting was regular.

In Meisler v. Meisler, 94 Ill. App., 396, the parties were husband and wife and the action was by the husband to have a deed from himself to a third party and thence to his wife declared fraudulent and void.  The court appointed the wife receiver of the property and by an order authorized her to deduct from the rents and income of the premises the sum of $50 per month for her services as such receiver, and for the expenses, support and maintenance of herself and her children.  The court say:  "The defendant in error was appointed receiver by the same order that fixed her allowance, so that at the time she was appointed she had performed no service as receiver.  We know of no precedent for such a practice.  The usual way of fixing the compensation of a receiver is to refer the cause to ascertain the services performed and report as to the compensation to which the receiver is entitled (3 Daniell's Ch. Pr., Secs. 2277 and 2352), or for the court, on hearing evidence in open court of the services performed, to fix the compensation."

In this connection we refer to one phase of the evidence. Horton says that he talked with stockholders and creditors of the bank and that it was his understanding that when the work was done and the affairs of the bank were completed the court would then be in a position to judge of the services and he would then fix a reasonable fee, and that his understanding was that it would depend largely upon the outcome of the affairs of the bank as to what would be a reasonable fee. We do not think that such an understanding with the creditors and stockholders would preclude the court from allowing partial compensation from time to time for services rendered and less than the value thereof, but we do think, in view of such evidence, that independent of the rule announced in the foregoing decisions, it would be unfair to the stockholders to have his entire compensation fixed until his services had been performed or prior to the approval of his final report.

We are of the opinion that upon the said application of these complaining stockholders the court should have vacated the order of December 30, 1904, as premature, because assuming to fix the compensation of the receiver for services not yet performed, and in refusing to vacate said order error was committed.

For that error the judgment of November 20, 1905, here complained of, will be reversed and vacated, and the cause will be remanded to the district court with directions to vacate the order of December 30, 1904, in so far as it fixes the receiver's compensation, and for such further proceedings in the matter of the receiver's compensation as may be deemed proper.      *Reversed and remanded.*

POTTER, C. J., and BEARD, J., concur.