## WORLAND vs. DAVIS

(No. 1082, February 26, 1924; 223 Pac. 227.)

Appeal and Error—Waiver of Errors—Carriers—Livestock Shipments—Negligence—Damages—Judgment on Conflicting Evidence.

1. Errors assigned in motion for new trial, but not argued either by brief or orally, are waived on writ of error.
2. In shipper's action against railroad for negligent failure to unload and properly feed 'and water cattle after cattle had been in railroad's care more than the 36 hours permitted under the contract of shipment, the railroad had the burden of proving that it was not negligent.
3. In shipper's action against railroad for negligent failure to unload and properly feed and water cattle for more than the 36 hours permitted by the contract of shipment, in which the railroad claimed that it was impossible to unload the cattle because the tracks at the place of unloading were filled, evidence *held* to make the question of defendant's negligence one for the jury.
4. A verdict on conflicting evidence will not be disturbed merely because appellate court might have arrived at a different conclusion.

Error to District Court, Fremont County; Ralph Kimball, Judge.

Action by Charles H. Worland against James C. Davis, Agent of the President of the United States, for damages growing out of alleged negligence in the care and handling of a shipment of livestock. Judgment for defendant and plaintiff brings error.

*Messrs. Brome & Hyde* for plaintiff in error.

Upon the facts proven at the trial plaintiff was entitled to recover as a matter of law; the verdict is contrary to the Court's instructions; it appeared from the evidence that there was a congestion of shipments, but the evidence of stock congestion at the yards was insufficient to support the verdict. The pretended excuse for the carriers' failure to unload the stock at Long Pine was on account of an un-

avoidable congestion of stock at the yards. There is no evidence in the records sustaining a finding of that kind, where under the law the evidence wholly fails to support the verdict and judgment, the same will be set aside. Fieldhouse v. Leisburg, 15 Wyo. 207.

*P. B. Coolidge, Wymer Dressler, Robert D. Neely* and *Paul S. Topping* for defendant in error.

Plaintiff in error contends that defendant in error kept a shipment confined in cars beyond the 36 hour period, without feed, water and rest, without any good reason therefor, for about 7 hours; the evidence established the fact that the yards at Long Pine were congested with stock shipments, and that it was impossible to get plaintiff's sheep into the yards, before they were taken there. It was not a negligent delay and the jury in substance so found; plaintiff's testimony as to the condition of the shipment was not convincing; his corroborating witness had had no experience in the handling of sheep, the case was fairly tried and the verdict was amply supported by the evidence. There is no apparent reason why the verdict should be disturbed.

RINER, District Judge.

The plaintiff in error Worland brought this action in the District Court of Fremont County against Walker D. Hines, Director General of Railroads. Thereafter, by stipulation, the name of the present defendant was substituted to meet the subsequent changes made officially in the office of Director General of Railroads.

The suit was instituted on account of alleged negligence in failing to unload and properly feed and water a shipment of stock which left Waltman on August 1st about five o'clock in the afternoon, billed to Fremont, Nebraska. The specific complaint was that the live stock train reached the town of Long Pine, Nebraska, on the Chicago & Northwestern Railroad, a railway then under the control of the Director General of Railroads, on the morning of August 3rd, 1919, and defendant did not, although the stock had

been in transportation for thirty-six hours without feed or water, unload said stock so that the same might be properly cared for, and damage resulted. The usual contract of shipment was signed by the consignor, under which the time limit of twenty-eight hours for unloading, feeding and watering the stock prevailed, and the shipper also signed a request authorizing the extension of this time to thirty-six hours.

The defense was a denial of the acts of negligence, and allegations that the failure to unload promptly was due to a great and unusual congestion of live stock shipments at Long Pine. Trial was had to a jury, resulting in a verdict for the defendant; judgment was entered on the verdict and Worland brings error.

The only contention relied on by plaintiff in error to reverse the judgment is that the judgment is not sustained by the evidence, and so contrary to law. Other errors were assigned in the motion for a new trial, but, not being argued either by brief or orally, are waived.

Riordan v. Horton, 16 Wyo. 363, 94 Pac. 448;

Chicago, B. & Q. R. R. Co. v. Lampman, 18 Wyo. 106, 104 Pac. 533. 25 L. R. A. (N S) 217, Am. Cas. 1912C 788.

An examination of the evidence discloses that the sheep in question were confined in their cars between five and six hours beyond the thirty-six hour limit permitted under the contract of shipment and the written waiver. Concededly it became, therefore, the duty of the defendant in error to establish that it was not negligent in unloading the animals. This was undertaken to be done through the evidence of certain witnesses who testified in substance, on behalf of the defendant in error, that at the time the Worland sheep arrived and thereafter the stockyards, located somewhat over a mile west of Long Pine station, as well as the Long Pine yards, were so completely occupied by the cars of other shipments and trains that it was impossible to get the sheep of plaintiff in error unloaded sooner than was done.

More particularly, the conductor of the freight train, containing the sheep, testified that it arrived at Long Pine at 3:45 a. m. on August 3rd, 1919; that the train waited for an hour and one half partially on the load to the stockyards tracks and partially on the main line, in an endeavor to get in to the unloading tracks; that "as everything was blocked and full of cars" the train was unable to reach the unloading facilities, and, consequently, was moved down the main line to the Long Pine station and put on a side track there.

The stockyards foreman testified that the reason the Worland sheep were not unloaded sooner was because "it was a case of clearing the yards to make room for cars"; that the cars had to be reloaded before room to unload could be found; that the stockyards at Long Pine handled during the year 1918 11,525 cars of livestock, in 1919 16,824 cars, and during the week of July 28th to August 4th, 1919, 714 cars; that just prior to the time the Worland sheep train arrived 55 cars of livestock were being loaded out "to make room for more stuff that was coming in", and then another 21 cars were reloaded ahead of the Worland sheep to "make room for the balance of the stock that was standing down there to unload"; "and there were three other trains that were coming in".

The yardmaster testified that the stockyards tracks during the night of August 2nd or the morning of August 3rd were "congested with cars"; that he personally knew that when the Worland sheep train pulled past the stockyards and on into the yards at Long Pine station both of the tracks to the stockyards were occupied, and the seven tracks at Long Pine station were all full of cars westbound and eastbound; that if a train was standing on the lead track to the stockyards it would block the entire yard; that some trains of livestock pass through Long Pine but don't unload there; that every train that comes into Long Pine has to use the main line for about a mile and half between Long Pine station and the stock yards; that 55 cars were begun loading betwen 2:45 and 3:45 a. m. on August 3rd, and completed

about 5:00 o'clock a. m.; that the train left about 6:00 a. m.; that there were 21 more cars to load after the Worland sheep train arrived.

On cross-examination of these witnesses it was developed that on the morning of August 3rd three cars of sheep and thirty-two of cattle were loaded at 2:15 a. m., and nineteen cars of cattle at 10:00 a. m.; that on the same day at 11:00 a. m. shipments of five and four cars of cattle, respectively, were unloaded; that at 11:30 a. m. of that day four cars, and 1:30 p. m. sixteen cars of stock were unloaded. No inquiry was made as to how long incoming or outgoing trains and cars occupied the main line between the Long Pine yards and the stockyards.

The chief dispatcher of the division out of Long Pine east testified concerning a train sheet which purported to give a correct history of the movement of trains over his division on August 3rd. This train sheet was offered in evidence by the defendant in error, being designated as "defendant's Exhibit 1-A". This exhibit does not appear to be in the bill of exceptions. The witness described the train sheet as showing that at 6:15 of the morning of August 3rd an extra freight left Long Pine with 55 cars of stock, including stock reloaded at Long Pine; that at 9:00 o'clock in the morning of that day another freight train left this station with 51 cars of stock, which was not reloaded at Long Pine but was local stock; that at 11:55 a. m. another freight train left Long Pine having 42 cars of stock, part of which had been reloaded at this station. The other facts disclosed by the train sheet it is impossible to set out, owing to its absence.

The evidence of the plaintiff in error and his helper was to the effect that the tracks were open and uncongested during the morning of the date last mentioned at least from 7:00 o'clock until the sheep were unloaded at about 10:45 a. m. They also testified that food and water were not available.

It is urged on behalf of plaintiff in error that this evidence stands uncontradicted. We do not think the record

bears out this contention. The defendant's employes testified that there was plenty of food and water afforded the sheep, so that on that point the evidence was conflicting.

On the question of whether or not there was negligence on the part of defendant in error in failing to unload the sheep promptly upon arrival at the Long Pine yards, we believe it fairly appears that the evidence was also conflicting.

From the brief abstract of the testimony of the witnesses herein above set out it appears that until 6 :15 of the morning of August 3rd the stockyards tracks were blocked in an endeavor on the part of the employes of defendant in error to dispatch a train of some 55 cars of stock; that after the Worland train arrived three other trains were coming in; that at 9 :00 o'clock a. m. a train of 51 cars of local stock left Long Pine; that at 10 :00 o'clock 19 cars more had been loaded out; that the Worland train of sheep, being forced, on account of congestion of cars on the stockyards tracks, to go to the Long Pine station yards, its movement back to the stockyards was necessarily hampered by incoming trains, every train coming into Long Pine being compelled to use the main line between station and stockyards. What influence the train sheet, which is not before the Court, as already has been pointed out, had on the jury, cannot be told. It certainly had a definite bearing on the question of defendant in error's negligence in promptly moving the Worland sheep train to the unloading chutes, especially in view of the placing of said train at the Long Pine station yards after it had waited an hour and a half at the stockyards in its endeavor to get into the blocked tracks there. When all this is considered in connection with the general testimony of the witnesses of defendant in error to the effect that the Worland sheep were not unloaded sooner because the yards had to be cleared of cars, we are led to the belief that the case was one peculiarly for a jury to solve.

This Court has said, quoting from an earlier case:

" 'Where an appellate court is empowered to revise upon the facts, it can never reverse on them simply because upon

the evidence, as submitted to it, it would have arrived at a different conclusion; and can only reverse when the verdict, or if the trial was by the court without a jury, the findings were so clearly against the weight of evidence that no mind of fair intelligence and faithfully exercised can be reasonably supposed to have arrived at the result which is complained of; or to state the rule in a different form, but as conveying the same idea, tends to an opposite conclusion;' which is to say, reducing the rule to a brevity, where the evidence is all one way and the verdict or findings another.' ''

Marshall v. Rugg, 6 Wyo. 270, 44 Pac. 700, 33 L. R. A. 679.

Tested by this rule the verdict in this case should not be disturbed. It cannot fairly be said that the jury were not authorized, under the conditions as shown by the record, to infer and find that the defendant in error was prevented, on account of the blocked tracks and unusual congestion of cars caused by heavy traffic, from promptly unloading the sheep.

It is hardly necessary to refer to decisions such as

Edwards v. Murray, 5 Wyo. 153, 38 Pac. 681;

Stahley, etc. Co. v. Beckstead, 27 Wyo. 173, 192 Pac. 1056;

Wheaton v. Rampacker, 3 Wyo. 441, 26 Pac. 912;

to call to mind the principle governing appellate courts on conflicting evidence, or where material evidence introduced on the trial of the case before a jury is absent from the record. A careful examination of all the evidence in this case, in the light of these principles, can lead only, we think, to the conclusion that the judgment of the Court below should be affirmed, and it is so ordered.

*Affirmed.*

Potter, Ch. J., and Blume, J., concur.

Riner, District Judge, sitting in place of Kimball, J.

NOTE—See 4 C. J. pp. 860, 1068, 1069; 10 C. J. pp. 379, 391.