INTERNATIONAL HARVESTER CO. OF AMERICA v.
LEIFER
(No. 1646; Nov. 19, 1930, 293 Pac. 381).

For the defendant and appellant there was a brief by
*Ingle & Ferguson,* of Thermopolis, Wyoming, and oral ar-
gument by *Mr. C. R. Ingle.*

284

For the plaintiff and respondent there was a brief by *Fred Wyckoff,* of Thermopolis, Wyoming, and *Kinkead* and *Pearson,* of Cheyenne, Wyoming, and oral argument by *Mr. Allan A. Pearson.*

RINER, Justice.

This case is here by direct appeal from a judgment of the District Court of Hot Springs County, which the plaintiff and respondent, hereinafter mentioned as the "plaintiff," recovered against the defendant and appellant, subsequently to be referred to as the "defendant."

The facts involved are briefly these: June 25, 1927, the defendant, dealing with the sales agents of the plaintiff, gave a signed written order for "1 Model S-24 Maximum

Capacity 2500 lbs. International Motor Truck, Tire Equipment—(Size and Kind) Front 30x5, Rear 30x5, Style of Body-Panel Stake, Style of Top ————, Other Attachments Cab & Curtains,'' for which he agreed to pay $1658.67, of which sum $800 was to be paid on delivery of the truck in the form of cash and also by an allowance for another truck to be turned over to plaintiff; the balance of $858.67 was agreed to be paid in twelve equal monthly installments. This order was sent on to the plaintiff at its branch office at Billings, Montana, for its acceptance, which was, on June 29, 1927, duly affixed in writing. Nearly a month later the truck was delivered, and on July 26, 1927, defendant executed and gave to plaintiff his promissory note for the balance of the purchase price aforesaid, and also a chattel mortgage on the truck to secure this note, which was made payable in monthly installments, as previously agreed in the written order. Defendant took the truck, used it, and paid the several installments due on this note, with the exception of the last two, which he failed to pay.

Plaintiff then brought this action to recover the balance due on the vehicle, and to foreclose the chattel mortgage thereon. Answering, the defendant admitted the execution of the note and mortgage to the plaintiff, but denied that any sum was due it by reason thereof. As a further answer it was alleged, that the plaintiff, in making the sale of the truck, represented and warranted, through its agents, that the truck would be delivered ''equipped with a fully inclosed cab and with wheels that would provide a clearance of eleven inches of the ground;'' that the warranty was violated and only a ''three-quarters cab which is not inclosed'' and rear wheels which would provide a clearance of only eight inches were furnished. It was also alleged, in substance, that when the truck was delivered to the defendant, plaintiff's agents promised that if the defendant would take the vehicle, a closed cab and wheels for the greater clearance would be supplied by plaintiff free of cost to the defendant, and, relying on this promise, the de-

fendant purchased the truck; that the plaintiff represented the truck to be free of mechanical defects and of good material and workmanship throughout, but the muffler on the truck was, nevertheless, so defective that it was worthless, and the battery was also worthless, and had to be returned to plaintiff. Damages were, accordingly, demanded on account of these matters, and also because of an asserted inability of the defendant to use the conveyance for two months each year in consequence of the broken warranty claimed as aforesaid. A reply was filed, putting in issue the affirmative allegations of the answer and pleading the written order signed by the defendant, as described above.

Trial was had to the court without a jury, with the result that a judgment was entered substantially as prayed in plaintiff's petition.

The brief and argument of the defendant in this court presents only claims for damages arising in connection with the failure on plaintiff's part to furnish an inclosed cab, and eleven inch clearance for the truck, the alleged defective muffler and battery. All other questions are necessarily waived. Riordan v. Horton, 16 Wyo. 363, 94 Pac. 448; Chicago, Burlington & Quincy R. R. Co. v. Lampman, 18 Wyo. 106, 104 Pac. 533, 25 L. R. A. (N. S.) 217, Ann. Cas. 1912C, 788. Indeed, proof as to the other elements of damages mentioned in the answer of the defendant does not appear in the record.

In the course of the trial, defendant offered to prove, in effect, that before he entered into the agreement to purchase the truck in question, he orally informed the agents of plaintiff that he wanted a truck with an inclosed cab, and that he would have no other kind; also that said agents orally assured him at that time that the truck they were selling had an entirely inclosed cab, and that they would send him such an one. This offer of proof was denied by the court upon plaintiff's objection, defendant was allowed an exception, and now insists that the proof should have been received.

The written order for the truck, signed by the defendant, and accepted in writing by plaintiff, constituted the contract of sale of the vehicle between the parties. It contained the following clauses:

"The motor truck herein ordered is sold under the REGULAR PRINTED WARRANTY GIVEN BY THE INTERNATIONAL HARVESTER COMPANY OF AMERICA as printed on the back hereof and no others. The purchaser agrees that this order contains the entire agreement relating to the sale of said motor truck and that he has received a true copy thereof."

The capital letters appearing in the foregoing quotation, appear in the original instrument as bold-faced type. On the back of the written order aforesaid, under the title "Warranty," are set forth the terms of the plaintiff's printed warranty, as well as certain limitations thereof; then follows the statement:

"The above warranties are in lieu of all other warranties express or implied and no person, agent or dealer is authorized to give any other warranties on the Company's behalf or to assume for it any other liability in connection with any motor truck."

An express warranty is defined by the uniform sales act, Section 4734 of Chapter 303, W. C. S. 1920, as:

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty."

Clearly then, defendant sought to establish an oral express warranty which was not embraced within the terms of the written contract of sale. Might that be done under its specific provisions quoted above? Provisions of this

character are not unusual and have been construed and their effect determined by appellate courts. Accordingly, we are not without authority concerning the consequences flowing from using them.

In Somerville, et al. v. Gullett Gin Co., 137 Tenn. 509, 194 S. W. 576, 577, the plaintiffs sought to recover damages on account of the failure of some cotton gins they had purchased from defendant to do the required work. The trial court, after excluding most of plaintiff's proof, directed a verdict in favor of the defendant. On plaintiffs' appeal to an intermediate appellate court, a reversal of the trial court's action was obtained, but upon certiorari granted by the court of last resort in the state, the judgment of the inferior reviewing court was reversed, and the action of the trial court affirmed. In the course of the opinion announcing that result, this language was used:

"The agent of the defendants in the case before us was supplied with blank order forms, one of which, heretofore set out, the plaintiffs signed and forwarded to the defendants. As appears above, it was stipulated in this order that 'no agreement verbal or otherwise, other than set forth herein, forms any part of this contract.' It was further stipulated that the machinery was sold 'subject to the warranty expressed on the back hereof and no other.'

"This order, containing these representations, signed by the purchasers, went on to the sellers for acceptance, before the contract was consummated.

"The Supreme Court of Washington has said:

" 'While an agent's authority can hardly be limited by the form of blanks he carries, that circumstance and the nature of the business should put a purchaser on inquiry.' Johns v. Jaycox, 67 Wash. 403, 121 Pac. 854, 39 L. R. A. (N. S.) 1151, Anno. Cas. 1913D, 471.

" 'Evidence that the authority of the agent to warrant was limited to the giving of a printed warranty only furnished him by his principal is not admissible unless it be also shown that the purchaser had knowledge of the limitation; but where the purchaser has knowledge that such a warranty was furnished, he cannot accept an oral warranty from the agent different in its terms and require the principal to comply with such oral warranty.' Mechem on

Sales, Sec. 1288, citing Wood Mowing & Reaping Co. v. Crow, 70 Iowa 340, 30 N. W. 609; Furneaux v. Esterly, 36 Kan. 539, 13 Pac. 824.

"If the agent undertook to make a verbal warranty as to these machines, in spite of the limitation on his authority indicated by this order form, such an agreement on his part would have been an unusual thing and without the apparent scope of this authority.

"The plaintiffs, having in effect made to defendants a written statement that there was no such warranty, that there was no agreement save as set forth in the written contract, prior to the acceptance of the order, should not now be permitted to assert the contrary.

"We do not see furthermore upon what principle parol evidence could be admitted to vary the terms of this written contract and to establish an independent verbal warranty."

The following excerpt from what was said by the Commission of Appeals of Texas, in disposing of the case of J. I. Case Threshing Machine Co. v. Manes, (Tex. Civ. App.) 254 S. W. 929, 931, also shows facts in some respects similar to those appearing here and the law as applied to those facts:

"The written order, among other things, contained these provisions:

" 'The company is not responsible to the purchaser for any undertakings, promises or warranties made by their representatives beyond those expressed herein.

" 'The undersigned hereby acknowledges to have received a full, true and correct copy of this order, and that no promises, representations, or agreements have been made not herein contained.

" 'No branch house manager, salesman, expert, or local dealer, unless authorized in writing by an officer of the company, has any authority to waive, alter, or enlarge this contract, or to make any new or substituted or different contract representation or warranty.'

"It is undisputed that J. W. Evans & Co., who received and forwarded plaintiff's order for the automobile, were local dealers, who had no authority to bind defendant by any agreement, promise, or warranty other than those con-

tained in the written order. Before the contract was binding it had to be accepted by the company at its home office in Racine, Wis. Notice of acceptance was sent direct to plaintiff, and he admitted that he received and retained a copy of the order. The company had no notice or knowledge of statements made by Evans in his efforts to obtain the order. There is no finding that plaintiff was induced to sign the contract by fraud or deceit.

"In view of this written contract and its clear provisions it is manifest that defendant company was not bound by any promise, agreement or representation made by Evans & Co. Bybee v. Embree-McLean Carriage Co., (Tex. Civ. App.) 135 S. W. 205; Blackstad Mercantile Co. v. Porter, (Tex. Civ. App.) 158 S. W. 216; Clark & Schaeffer v. Gaar-Scott & Co., (Tex. Civ. App.) 163 S. W. 681."

The case last cited was one where the plaintiff sought to recover the purchase money paid for an automobile and to cancel unpaid purchase notes, it being claimed that defendant's agent had made certain representations concerning the machine which were not correct.

From the same jurisdiction and to similar purport, see First National Bank of Garner, Iowa, v. Smith, (Tex. Civ. App.) 183 S. W. 862; Avery Co. of Texas v. Harrison Co., (Tex. Civ. App.) 267 S. W. 254.

In McCormick Harvesting Machine Co. v. Allison, 116 Ga. 445, 42 S. E. 778, an action for part of the purchase price of some harvesting machinery, it was in evidence that the defendants signed a printed order for the machine, directed to the plaintiff. This order contained the following agreement: "Machine is to be warranted as per warranty on the back of this order, without condition or erasure, a copy of which * * * we have this day received and accepted." On the back of the order, under the title "Machine Warranty," was set forth a printed warranty clause, followed by the statement: "No agreement or warranty other than that printed in this order is binding on the McCormick Harvesting Machine Company." The court, in disposing of the case, said:

292

"One of the complaints made by the certiorari was that the magistrate erred in allowing Nathan Allison, one of the defendants, to testify, over plaintiff's objection, that Black and Yancey, agents for the plaintiff, guarantied that the machine would cut and bind a designated 'piece' of 'high tangled corn.' The objections urged were that the contract between the plaintiff and the defendants specified the only express warranty for which the plaintiff should be bound, and that the agents could not bind their principal by a warranty made after the sale of the machine. We think the objections were well taken, and that the testimony should have been excluded. The defendants had expressly agreed in the contract signed by them that no agreement or warranty other than that specified in the contract should be binding upon the plaintiff, and therefore it was not permissible for them to prove that plaintiff's agents made any other warranty. Moreover, this guaranty or warranty that Allison testified was made by the agents of the plaintiff appeared to have been made after the sale of the machine, and could not, therefore, have been a part of the contract of sale. * * *

"The certiorari should have been sustained, because the magistrate erred in admitting the testimony referred to in the first division of this opinion, and because the verdict was without evidence to support it."

So in W. A. Wood Mowing and Reaping Machine Co. v. Crow, 70 Iowa 340, 30 N. W. 609, it was held that if a person who makes another his agent for the sale of machinery, furnished him with the kind of warranty he is to give, a purchaser who has knowledge that such warranty was furnished the agent, cannot assert a parol warranty from the agent different in its terms and require the principal to comply with such oral warranty. And in Furneaux v. Esterly, 36 Kans. 539, 13 Pac. 824, it was decided that where a purchaser was supplied with a printed warranty which expressly provided that the agent with whom he was dealing had no authority to change or vary its terms, such provision was a sufficient notice to the purchaser of the limitations upon the agent's authority. The case last cited would seem to be especially applicable here, where the bold-

faced type therein particularly called the attention of the person signing the written order to the provisions relating to the printed warranty incorporated in said order.

Finally, Professor Williston has well said (I Williston on Sales (2nd Ed.) page 414, Sec. 215):

"There is no more frequent application of the parol evidence rule than in cases where it is sought to attach a parol warranty to a written sale or contract to sell goods. If the writing states in terms that there is no warranty or none except what is contained in the writing, it is clear that the parol warranty is ineffectual because contradictory and not merely additional to the writing."

Under these authorities it is quite clear, as it seems to us, that the trial court was correct in excluding proof of an express oral warranty not contained, of course, in the written contract of the parties,—first, because the defendant knew and agreed, when he signed the written order, that the plaintiff's agents had no authority to make any other warranty than as expressed in the writing, and secondly, because to have allowed the introduction of such testimony would, under the circumstances, have resulted in a plain violation of the parol evidence rule.

Defendant also offered to prove that:

"In a conversation with Mr. Kennedy (local dealer of plaintiff), at the time the truck was delivered to him, that Mr. Kennedy reported that the cab on the truck was not the cab sold to him, and that the plaintiff did not have the kind of cab which they sold to him, but that they would get a cab such as he ordered, being an enclosed cab, and would ship to him, and install the same on the truck which he bought, and that the witness informed Mr. Kennedy that he would not accept the truck unless the plaintiff would agree to install the cab which he ordered."

This offer of proof was also rejected by the trial court, and it is urged by the defendant that this, too, was error.

Mr. Williston, in his text cited above (p. 408, Sec. 211), treating of statements made by the seller after the bargain has been made between him and the purchaser, says that:

"If the buyer was entitled to return the goods for any reason, or in good faith claimed such a right, a warranty given to induce him to forbear to exercise it and to keep the goods is supported by sufficient consideration. But if the buyer had no color of right to return the goods, a warranty made subsequently to the sale as an inducement to the buyer to keep them is without consideration."

It is not difficult to perceive, accordingly, that the ruling below and last above mentioned was correct, as the defendant was quite well aware, from his signed written order, that Kennedy had no authority to give such a promise. Again, there is no complaint made on the part of the defendant that the truck, as delivered, did not correspond exactly with the written signed order aforesaid, so far as cab and size of wheels were concerned. So far as we are able to determine from the record, it did. That being so, plaintiff had no color of right to return the truck, because of such equipment. Hence there was no consideration whatsoever for Kennedy's promise offered to be proved, even assuming he had power to make it.

Relative to the defendant's complaint that the muffler on the truck was defective, the proof submitted by him is far from clear, though this claim would appear to come within the terms of the express warranty embraced in the written contract of sale, that the truck was "to be free from defects in material and workmanship under normal use and service" within a limitation of ninety days after delivery of the truck to the purchaser. The defendant admitted he did not examine the muffler at the time the car was delivered. His testimony concerning its alleged defective condition, was merely this:

"That truck come in and one time I went over the truck there and I saw that muffler was tied up with hay wire,

there were hay wire on the front end and hay wire on the back end, held the muffler together, and one time he blowed up.''

There was no proof that the muffler had been used proply by defendant and as intended by the manufacturer of the truck; no proof that it had not been struck or injured by the defendant's use thereof when it ceased to function, and it does not appear either when that happened. The trial court was, we think, right in refusing to award defendant damages on account of this claim.

The defendant made his offer to prove that the battery which came with the truck was dead and worthless, and that the reasonable value of a serviceable battery was $20. This offer was refused and exception allowed to the ruling. Defendant was, however, permitted to prove that he returned the battery to the plaintiff, but that it was kept by the latter and no other sent back in replacement. While it is true that batteries are specifically excluded from the operation of the express warranty in the contract of sale between the parties, still this fact gave plaintiff no right to retain the defective battery when the defendant sent the same on to it at Billings. Yet the court made no account of this matter in rendering judgment. This, we think, should have been done. The judgment of the trial court will, therefore, be reversed and a new trial granted for the purpose only of taking account for such a battery as will function in the truck, unless plaintiff shall elect to deduct the sum of $20 from the amount of the judgment as given; in all other respects the judgment of the trial court is affirmed, each party paying his own costs in this court.

BLUME, C. J., and KIMBALL, J., concur.