## CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, ET AL. v. LAMPMAN.

### (No. 591.)

APPEAL AND ERROR—NECESSITY FOR MOTION FOR NEW TRIAL—BRIEFS —WAIVING ERROR—RAILROADS—CARRIERS OF PASSENGERS—INJURY TO PASSENGERS—NEGLIGENCE—RULES OF CARRIER—ADMISSIBILITY— MATERIALITY—STOPPING TRAINS AT STATIONS—NEGLIGENCE IN STARTING TRAINS—NEGLIGENCE OF PASSENGER IN ALIGHTING FROM TRAIN—DUTY OF CARRIER—DUTY OF PASSENGER.

1. Alleged errors relating to matters occurring on the trial, which were not included in the motion for new trial, are not to be considered.

2. Alleged errors not referred to or discussed in the brief of plaintiffs in error are waived.

3. That a rule of the defendant railroad company required the station to be announced on the arrival of passenger trains at stations, and that it was not complied with by the proper employees, were immaterial in an action by a passenger for injuries received while alighting from a train at a station, and the defendants were entitled to have the jury so instructed, evidence of the rule and the failure to comply with it having . been admitted, where the plaintiff testified that she lived at and was well acquainted with the station, knew when the train stopped that she had arrived at her destination, and at once left her seat for the purpose of alighting.

4. In stopping a train at a station for the purpose of allowing passengers to alight, it is the duty of the railroad company to stop the train for a reasonable time to afford passengers for the station an opportunity to alight in safety; and it is equally the duty of passengers, when they know the train has stopped at the station where they desire to alight, to do so with reasonable promptness. The length of time the train should stop necessarily varies with circumstances.

5. In an action for injuries alleged to have been received, because of the starting of the train, by a passenger while in the act of alighting from a railroad train at a station which was her destination, the rule is that if the train was stopped for a reasonable time to afford the plaintiff an opportunity to alight in safety, then those in charge of the train had the right to assume that plaintiff had availed herself of the opportunity, and had performed her duty to alight with reasonable diligence, and they wer' not required before starting the train to ascertain if she had in fact done so, unless there was something in the circumstances to cause them, in the exercise of reasonable diligence, to suspect that some one had not gotten off, or was in the act of doing so, or was otherwise in a position of danger if the train should be started.

6. *Held,* in such an action, that a requested instruction should have been given "that in case the train in question was stopped a sufficient time for plaintiff to alight, those operating the train were under no obligation to ascertain if plaintiff had actually gotten off or not."

7. A rule of the railroad company that before giving the "all right" signal to the conductor, the brakeman shall look through the train to see that there are no further move-

ments of passengers, and that the train shall not be started until all movements of passengers to and from the cars have ceased and the "all right" signal given by every trainman, provides for a higher degree of care than the law requires, if in fact the train is stopped at a station, for a reasonable and sufficient time for passengers in the exercise of reasonable diligence to alight in safety; and the failure to comply with the rule in such case will not constitute negligence for which the company will be liable, unless there should be something in the circumstances known to, or which would cause, those in charge of the train by the exercise of reasonable diligence to suspect that some one would be endangered by starting the train. If the stop was not for a reasonable time, the company would be liable for an injury sustained by a passenger who, using reasonable diligence, was attempting to alight when the train was started, but the liability would arise because of the absence of that degree of care required by the law of the carrier, and not from the failure of the trainmen to observe the company rules aforesaid.

8. The observance of the rules of the carrier as to the starting of trains may or may not constitute due care, and the failure to observe them may or may not constitute negligence, with respect to an injury to a passenger when alighting from a train at a station; the question in each case being whether there was a failure to exercise that degree of care which the law requires, rather than whether some rule of the carrier has been violated.

9. Where the private rules of a carrier for the government of the conduct of its servants in the operation of its trains do not require more than the law does respecting the matters covered by such rules, their admission in evidence in an action against the carrier for an injury alleged to have been caused by its negligence is not prejudicial; but where they require more than the law requires, or where they require the performance of acts not recognized by the law as a duty devolving on the carrier, they are inadmissible.

10. A rule of the carrier requiring brakemen to assist passengers to alight from trains *held* to have been erroneously admitted in evidence, there being no duty resting upon the carrier by law to so assist the plaintiff who was injured in alighting, and as, under the instructions, the jury might have well concluded that any violation of the rules by

the servants of the company rendered it liable, the admission of the rule was prejudicial.

11. In an action against a railroad company for an injury to a passenger when about to alight from a train at the station of her destination, the evidence was conflicting whether the plaintiff stepped or jumped from the car, or was thrown therefrom by reason of a sudden jerk or movement of the train while she was on the steps of the car. *Held,* that it was for the jury to say whether or not under the circumstances she was guilty of negligence, and instructions requested by defendant were properly refused to the effect that, if plaintiff attempted to alight from the train while it was in motion, or if she went upon the steps of the car while the train was in motion and was thrown therefrom by a sudden movement of the train, she could not recover.

12. The jury was properly instructed that "ordinarily a passenger would not be justified in getting off the train while in motion, except at his own risk; unless the train is moving very slowly, and the circumstances are specially favorable, it would be deemed *prima facie* negligence."

13. Error in giving an instruction is waived, where, although it is assigned in the petition in error, it was not stated or discussed in the brief of plaintiffs in error, but was attempted to be raised long after the time for filing their brief had expired, and after the brief of opposing counsel had been filed.

[Decided November 3, 1909.]                    (104 Pac. 533.)

Error to District Court, Big Horn County, Hon. Carroll H. Parmelee, Judge.

Action by Elvira Lampman against the Chicago, Burlington & Quincy Railroad Company and Chris. Rhinemuth. Verdict and judgment for the plaintiff, and the defendants prosecuted error. The facts are stated in the opinion.

*H. S. Ridgely,, John P. Arnott,* and *N. K. Griggs,* for plaintiffs in error. (*J. E. Kelby,* of counsel.)

The only reasonable conclusion from the evidence is that the train was moving before the plaintiff reached the platform of the car, and that it was gross negligence on her part to go upon the steps of the car while the train

was in motion. The manner in which the plaintiff fell upon leaving the car renders it evident that she must have stepped or jumped from the car instead of being thrown from it as she claims. The plaintiff below was erroneously permitted to testify that she had been distressed in mind as well as body. The question was not limited to distress of mind either proximately or remotely resulting from the injury itself. (Morse v. Duncan, 14 Fed. 396; R. R. Co. v. Siddons, 53 Ill. App. 607; Randolph v. R. R. Co., 18 Mo. App. 609, 120 N. W. 307.) The rules of the company had no place in the evidence and were erroneously admitted. In the first place they apply to passenger trains only and not to mixed trains such as the one upon which the plaintiff below was traveling. (Dixon v. Ry. Co., 118 N. W. 946.) In addition to the fact that the rules were not intended for mixed trains, the testimony demonstrates that they could not possibly have applied to the train in question, for the trainmen had duties to perform other than those required by those rules. There was no one to give the signal to the conductor. One brakeman was on the engine and the other was inside the baggage car, each as he should have been. The train was required to do both passenger and freight traffic. Although the particular train carried no freight cars, it was still a mixed train, and those having charge of it could not apply to it rules prescribed for passenger traffic exclusively and at all times. There was no law in Wyoming making necessary the announcing of trains, and without such, no negligence can be predicated on a failure to make such announcement. (Houston, &c., Co. v. Dickerson, 89 Ga. 455.) The plaintiff knew when the train stopped that her destination was reached, and therefore the rule as to announcing of trains was inadmissible. (Ry. Co. v. Hobbs, 118 Ga. 228.) It was error to exclude the evidence offered by the defendants below that the conductor supposed when the train started that all the passengers for the station had alighted. (Straus v. R. R. Co., 75 Mo. 185; Harris v. Ry. Co., 36 Tex. Civ. App. 96.)

By the overwhelming weight of the evidence the train was stopped for two minutes, which was ample time for the plaintiff to alight. The train having stopped a sufficient time for the passenger to get off the carrier is not liable if the passenger is injured by jumping from the train while it is moving to avoid being carried by the station. (Davis v. R. R. Co., 18 Wis. 185; Shealy v. Ry. Co., 67 S. C. 61; Darmont v. R. R. Co., 19 La. Ann. 441; Butler v. R. R. Co., 60 N. W. 1090.) By the evidence of the plaintiff's own witnesses that the stop was half of a minute, she had sufficient time to alight. The plaintiff was guilty of contributory negligence if she was even upon the platform when the train was moving, as she admits she was, and much more was she negligent in then going down to the lower step, while the train was moving from six to eight miles an hour. Had the train not stopped at all she would have been negligent under the circumstances stated. The great weight of the evidence is to the effect that she voluntarily attempted to alight. If so, the starting of the train was not the proximate cause of her injury, but it was the result of her own negligence, defeating her right of recovery. (C., I. &c. Co. v. Dufrain, 36 Ill. App. 352; Ry. Co. v. Highnote, 86 S. W. 923; Ry. Co. v. Cleveland, 61 S. W. 931; Ry. Co. v. Wilson, 100 S. W. 290; Hill v. R. R. Co., 124 Ga. 243; Walker v. R. R. Co., 41 La. Ann. 795; Jacob v. R. R. Co., 63 N. W. 503; Butler v. R. R. Co., 60 N. W. 1090; R. R. Co. v. Martelle, 91 N. W. 364.) A passenger who, after being warned not to alight from a moving train, proceeds to do so, cannot recover for injuries received. (R. R. Co. v. Lutz, 84 Ill. 598; Kilpatrick v. R. R. Co., 140 Pa. 302.) A party alighting from a moving train after being warned is guilty of contributory negligence and cannot recover, although the stop at that station was not a reasonable length of time to allow passengers to alight. (Jewell v. R. R. Co., 54 Wis. 610; R. R. Co. v. Stratton, 78 Ill. 88.) Regardless of the plaintiff's actual purpose in going to the point of danger

and of the manner in which she left the train, it is clear that she went down the steps despite the warning given her by one who saw what she was doing. We urge the proposition that the mere fact of her getting off the train at all was conclusive proof of negligence on her part and the instruction asked by the defendants upon that matter should have been given.

In case the train was stopped a sufficient time for passengers to alight, those operating the train were not under obligations to ascertain whether the passenger had actually gotten off or not, and the instruction requested to that effect should have been given. (Davis v. R. R. Co., *supra;* Darmont v. R. R. Co., *supra;* Butler v. R. R. Co., *supra.*) The defendants were entitled to the instruction which was refused to the effect that the jury should entirely disregard the evidence showing that the station had not been called. (Ry. Co. v. Hobbs, *supra;* R. R. Co. v. Dickerson, *supra.*) It was plaintiff's duty in case of an inadequate stop not to try to get off the train, but to continue thereon, and look to defendants for any damages she might sustain in consequence of her being carried past her station. It was the plaintiff's duty also to be observant and to notice whether the train was moving or not, to protect herself in every way, and to be vigilant to see that no sudden jerk should throw her off the train. It was error to refuse an instruction to that effect. Even if the rules of the company, which were admitted in evidence, had been applicable they would not tend to establish negligence on the part of the defendants, but before the plaintiff could recover it was incumbent on her to establish by a preponderance of the evidence that she was actually injured by reason of the negligence of the company in not properly stopping its train, and in starting while she was alighting. (118 N. W. 946.) To get off a moving train is a negligent act, especially of a passenger of the age of plaintiff and situated as she was when she attempted to alight. It was error to so instruct the jury that the plaintiff was permitted to recover for future pain or suffering resulting from her

injury.   (Williams v. Clark, 120 N. W. 307.)   The verdict was grossly excessive in amount.

*E. E. Enterline* and *W. L. Walls,* for defendant in error.

It is rather inconsistent for counsel for the defendant below to urge that the train in question was a mixed train, since it was alleged in their answer that it simply carried passengers on the date in question.   Nor is it to be comprehended what freight duties there were to be performed on that day, when the train had passenger equipment only. It is unreasonable, therefore, to argue that the train was not governed by the rules prescribed for passenger traffic. However, it did not seem to occur to the employees in charge of the train that they had any duties to perform relative to the care of pasesngers, and they did not pay any attention whatever to the safety of the passengers on the train.   Upon the evidence the jury were justified in finding that the plaintiff was thrown from the train by a sudden jerk after she had reached the steps of the car for the purpose of· alighting.   Mental suffering is an element of damage when it accompanies bodily injury.   (Stevens v. R. R. Co., 96 Mo. 207;  Ry. Co. v. Norment, 84 Va. 167;  Oil Co., v. Tierney, 92 Ky. 367;· Goodhart v. R. R. Co., 177 Pa. 1;  Yerkes v. R. R. Co., 112 Wis. 184; Brasington v. R. R. Co., 62 S. C. 325;  Williams v. Clark, 120 N. W. 307.)   ●

The rules of a railway company are admissible on behalf of a person injured through the negligence of the company's employees, when such negligence consists in a violation of any rule prescribed for the government of the employees, and an observance of the rule might have avoided the injury.   (R. Co. v. Bates, 103 Ga. 333;  R. Co. v. State, 81 Md. 371;  Cincinnati v. Lynn T. Co., 135 Ill. 371;  Stevens v. R. Co., 184 Mass. 476;  Frizzell v. R. Co., 124 Fed. 176;  Carlson v. R. Co., 79 N. W. 689;  R. R. Co. v. Ashley, 67 Fed. 209;  R. Co. v. Altemeier, 60 O. St. 10.) If the rules with reference to giving the "all right" signal had been observed in the slightest degree, the accident

would not have occurred, and the rule could easily have
been complied with. For the non-observance of those
rules the employees were guilty of negligence. The rules
with reference to assisting passengers in getting off and
on the train, especially where women are boarding or alight-
ing from the train, might have been observed, and if they
had been, the accident would not have occurred. The rules
which were introduced in evidence did not in this case
provide for a higher degree of care than the law provides,
and therefore their admission was not prejudicial in any
event. A railway carrier of passengers is bound to call
out the name of the station a sufficient time before arriving
in order to give a passenger desiring to alight there the
opportunity to prepare to do so. (3 Thompson on Negli-
gence, Secs. 2861, 2862; White's Suppl., Sec. 2862.) The
petition alleged that there was a failure to announce the
station. This allegation was denied by the answers. While
it is true that, after the train arrived and stopped, the
station was recognized; still, the law requires that the
station be announced a sufficient time before arriving, so
that passengers may prepare to leave the train. The rule
introduced is nothing more than what the law requires.
If the station had been announced, the plaintiff might have
alighted in safety, for she could have walked up to the
end of the car before the train stopped, which passengers
frequently do, and the brakeman would then have noticed
that plaintiff was about to leave the train, and might have
assisted her. No objection can be here insisted upon which
was not made when the question arose in the trial court.
(Johnson v. Ry. Co., 100 Pac. 390.) It was not error
to refuse to strike out the evidence touching the fact that
the station had not been announced before the train ar-
rived. (Martin v. Cascaddin, 34 Mont. 308.) An appel-
late court will not disturb the judgment rendered upon a
verdict upon conflicting evidence. (11 Cur. Law, 231;
Rainsford v. Massengale, 5 Wyo. 1.)

The mere fact that a passenger leaps from a railway
train while in motion creates no presumption of negligence,

but the question is one for the jury.  (3 Thompson on Negligence, Secs. 2879, 3011, 3014, 3015; White's Suppl., Sec. 3015; Carr v. R. Co. (Cal.), 33 Pac. 213.)   If the train is not stopped at the station for a sufficient length of time to permit the passenger by use of reasonable exertion to get off before the train is again started, and the passenger undertakes to alight while the train is stationary but it is started during the act of alighting, he can recover. And whether the time of the stop was reasonable or not must depend upon the circumstances of each case.   (3 Thompson on Negligence, Secs. 3023, 3024.)   Even if the voluntary attempt to alight is after the train is in motion, the party is not precluded from recovery.  The question of contributory negligence is one for the jury.   It was the duty of the defendant company to see that the movement of passengers had ceased before starting the train. This is especially true as to old ladies and children.  (3 Thompson on Negligence, Secs. 2865, 2866.)   It is the duty of the conductor to know whether a passenger intends to get off at a particular station, and if so, to have the station seasonably announced and the train stopped a sufficient length of time.  (3 Id., Sec. 2863.)   The law requires no more care on the part of a woman for her own safety in getting on or off a train than would be commensurate with her years, knowledge, experience, sex and capacity.   It was a question for the jury to determine in view of all the circumstances, whether the plaintiff was negligent in going down to the lower step of the car.  The verdict was sustained by overwhelming proof, and the damages awarded were not excessive.

The defendant in error objects to the consideration of all the alleged errors referred to in the brief of plaintiff in error, which were not specifically mentioned in the motion for a new trial, as not reviewable on the ground that the same are not properly here for consideration.  (Ross v. State, 16 Wyo. 285.)  A consideration of the alleged errors concerning instructions numbered 9 and 10 is also objected to on the ground that they were not mentioned in the orig-

inal brief of plaintiff in error, and are therefore waived. (Ross v. State, 16 Wyo. 285; Horn v. State, 12 Wyo. 80.)

Beard, Justice.

. The defendant in error, as plaintiff, brought this action against the plaintiffs in error, as defendants, to recover damages for a personal injury alleged to have been sustained by her on account of the negligence of said defendants. The case was tried to a jury, resulting in a verdict and judgment in favor of said plaintiff and against said defendants for $8211.00 and costs; from which judgment said defendants bring error.

The plaintiff, on August 2, 1907, was a passenger for hire on a mixed train on the defendant railroad company's road from Cody to Garland, stations on said road in Big Horn County, and the other defendant, Rhinemuth, was the conductor in charge of the train. The negligence charged in the petition is that, upon the arrival of the train at Garland, and while plaintiff, with all due care and diligence, was in the act of alighting therefrom, and before she had been allowed a reasonable time to alight, the said conductor wrongfully, carelessly and negligently signalled the engineer to start, and that the train was negligently, suddenly and violently started while plaintiff was in the act of alighting therefrom, and before she had been allowed a reasonable time to alight, by reason of which she was thrown violently to the station platform and injured. It is further alleged that it was defendant's duty to announce the station at or before the arrival of the train at said station, and to stop the train and keep it standing a sufficient length of time to afford plaintiff an opportunity to alight therefrom in safety; that they neglected their duty in that regard, and did not give plaintiff an opportunity to alight, and that her injuries were caused by defendant's said negligence. The defendants denied these allegations, denied any negligence on their part, and alleged that plaintiff's injuries were caused by her own

negligence in attempting to alight from the train while it was moving.

It appears from the evidence that the train upon which plaintiff was a passenger was a regular train, classed as a mixed train, and equipped for both freight and passenger service; but on this occasion consisted of an engine, a combination car (one-half of which was used for the transportation of baggage, express and mail, and the other half containing seats for passengers) and two coaches. The plaintiff testified that she was sixty years of age and reasonably active; that she and her grandson, a boy about fourteen years of age, were riding in the rear coach of the train about four seats from the rear end of the car; that the train arrived at Garland station about five o'clock p. m. and stopped, the rear end of the car in which she was riding not quite reaching the station platform; that the station was not announced by any of the employes of the company; that she resided at Garland and knew when the train stopped that it had arrived at her destination, and that she and the boy at once left their seats and walked to the front end of the car to alight; that the boy walked just in front of her, opened the car door, went out upon the platform of the car, ran down the steps, threw a valise which he was carrying onto the station platform and jumped off; that the train was then moving and that she noticed that the train was moving when she stepped out of the car door, but thought it would stop again, as it had stopped so short a time; that she went down to the lower step of the car holding to the railing with her left hand and holding her skirts and pocketbook in her right hand; that she did not intend to get off when she went down the steps because it was going too fast, and she did not think it prudent for one of her age to jump off the train, but thought it would slow up or stop at the station door; that when she reached the lower step the train gave a lurch or jerk and threw her off. There was evidence tending to corroborate her testimony as to her movements after the train stopped, and that it stopped a very short time—estimated

by some of the witnesses at half a minute—and that she
was jerked or thrown from the step, and that at the time
she went down the steps the train had moved only a few
feet and had not attained a speed of more than three or
four miles an hour.   On the part of the defendants, the
conductor, engineer, station agent and a brakeman testified
that the train stopped about two minutes; the engineer
and agent stating that they observed the time by their
watches and that the stop was two minutes.   This was
the only stop at that station at that time.   The conductor
testified that before giving the signal to start he looked
back along the train and saw no one getting on or off the
train; that the train had gone between thirty and forty
feet before he got on between the first and second cars;
that he was facing the rear of the train when he got on
and saw no one and that the train was going probably
five or six miles an hour when he got on.   As to the man-
ner in which the train was started, the distance it had
gone before the happening of the accident and the speed
of the train at that time, the evidence is conflicting.   There
is also a conflict in the evidence as to whether plaintiff
stepped or jumped from the steps, or was jerked or thrown
therefrom.

The petition in error contains forty-seven alleged errors
of the trial court.   Nos. 1, 2, 3, 5, 6, 7, 11, 12, 15, 16, 21,
22, 23, 32, 33, 37, 39 and 40 relate to matters occurring
on the trial, but are not assigned as error in the motion
for a new trial, and are not, therefore, properly here, and
cannot be considered.   (Rule 13, Rules of Supreme Court,
10 Wyo. VIII; Ross v. State, 16 Wyo. 285, on petition
for rehearing, 307; C., B. & Q. R. R. Co. v. Morris, 16
Wyo. 308.)

Nos. 4, 8, 9, 10, 24, 27, 28, 29, 30, 31, 36, 38, 43, 44, 45
and 46 are not referred to or discussed in the brief of
plaintiffs in error, and are therefore waived.   (Phillips et
al. v. Brill et al., 15 Wyo. 521; Boswell, Admr., v. Bliler,
9 Wyo. 277.)   No. 35 was withdrawn on oral argument,
the ruling being in favor of plaintiffs in error.   No. 20,

assigning as error the admission in evidence of a rule of the defendant company requiring the station to be announced on the arrival of passenger trains at stations, and No. 41, the denial of a motion to strike out all evidence in reference to the failure to announce the station, may be considered in connection with the refusal to give the 9th instruction requested by defendants, which is as follows: "You are instructed that as plaintiff herself states that she was acquainted with the station of Garland, knew when the train stopped there that she had arrived at her destination, and at once, when the train so stopped, left her seat to alight, it is immaterial whether the train was or was not called by any one on approaching Garland, and you will, therefore, entirely disregard the allegation in plaintiff's petition, as also all evidence showing such call not to have been so made."

The purpose of announcing the station is to inform passengers that the train has arrived or is about to arrive at a certain station in order that they may prepare to and alight promptly. In this case the plaintiff had testified, before the rule was offered in evidence, that she lived at Garland; was well acquainted with the station; knew when the train stopped that she had arirved at her destination, and at once left her seat for the purpose of alighting. It thus appears that she was possessed of all the information that an announcement of the station could have given her, and that the failure to do so did not cause or contribute to her injury. There being no evidence to sustain the allegation of the petition that the injury was caused by the failure to announce the station, the evidence as to such failure and the rule of the company requiring such announcement to be made were immaterial, and the defendants were entitled to have the jury so instructed.

It is also contended that the court erred in refusing to give the following instruction requested by defendants: "You are instructed that in case the train in question was stopped a sufficient time for plaintiff to alight, those operat-

ing such train were under no obligation to ascertain if plaintiff had actually gotten off or not."

It was the duty of defendants to stop the train at the station for a reasonable time to afford passengers for that station an opportunity to alight in safety; and for negligence in that respect, resulting in injury to such passenger, no doubt the company would be liable. It is equally the duty of passengers when they know that the train has stopped at the station where they desire to alight, to do so with reasonable promptness. The length of time the train should stop necessarily varies with the circumstances. For instance, it requires more time for many passengers to get off or on a train than it does for a few. In the case at bar the court, by other instructions, properly submitted that question to the jury. If the jury found from the evidence that the train was stopped for a reasonable time to afford the plaintiff an opportunity to alight in safety —and there was evidence from which it may have so found —then we think that the reasonable rule, supported by the authorities, is that those in charge of the train had the right to assume that plaintiff had availed herself of the opportunity and had performed her duty to alight with reasonable diligence, and that they were not required to ascertain if she had in fact done so, and that they would not be guilty of negligence in starting the train after having allowed such reasonable time, unless there was something in the circumstanecs to indicate or cause them, in the exercise of reasonable diligence, to suspect that some one had not gotten off, or was in the act of so doing, or was otherwise in a postion of danger if the train should be started.

In Thompson's Commentaries on the Law of Negligence, Vol. 3, Sec. 2861, the rule is thus stated: "The weight of authority is to the effect that a railway company discharges its duty when it stops at any station long enough to afford all passengers, intending to alight there, a reasonable time to alight in safety, and that the conductor is not bound to go through the train and ascertain that each passenger, so intending, has alighted, before starting the train;

but that, having afforded a sufficient time, he is entitled to presume that every passenger has availed himself of the opportunity." And in Shealey v. Railway Co., 67 S. Car. 61, it is held that "after the railroad carrier has discharged the duty of stopping the train for a reasonable time to allow the passengers to alight therefrom, the conductor may fairly assume that passengers have with reasonable diligence availed themselves of the opportunity afforded to alight, and may signal the train forward, unless he has knowledge that a dilatory passenger, or one impeded in movement by physical infirmity or otherwise, is about to alight, or is in some position which would be perilous in the event of starting the train. The law, however, does not impose upon the railroad carrier, after reasonable opportunity for passengers to alight has been afforded, the further duty to *ascertain,* to *know,* whether a passenger is in the act of alighting, or on the platform of the coach for that purpose." In Straus v. K. C. St. J. & C. B. R. R. Co., 75 Mo. 185, the court said: "If the train was stopped a sufficient length of time to enable plaintiff to conveniently alight, and without any fault of the company's servants he failed to do so, and the conductor, not knowing and having no reason to suspect that plaintiff was in the act of alighting, caused the train to start while he was so alighting, then the company would not be liable." (Hurt v. St. Louis &c. R. Co., 94 Mo. 255; Raben v. Central Iowa R'y Co., 73 Ia. 579; Central of Georgia R'y Co. v. McNab (Ala.), 43 S. E. 222; 6 Cyc. 613; 5 Enc. Law. (2nd Ed.), 578; Note, 7 A. & E. Ann. Cas. 760.)

It is argued by counsel for plaintiff that this instruction was properly refused because of certain rules of the company, admitted in evidence over defendant's objection, to the effect that before giving the "all right" signal to the conductor, the brakeman should look through the cars to see that there were no further movement of passengers, and that the train should not be started until all movement of passengers to and from the cars had ceased and the "all right" signal had been given by every trainman. The

requirements of these rules, in so far as they require those in charge of the train to look through the cars before starting the train and to see that there were no further movements of passengers, require a higher degree of care than the law requires, if in fact the train was stopped for a reasonable and sufficient time for passengers in the exercise of reasonable diligence to alight in safety; and the failure to do so in such case would not constitute negligence for which the company would be liable, unless, as we have already stated, there was something in the circumstances known to, or which would cause those in charge of the train by the exercise of reasonable diligence to suspect that some one would be endangered by starting the train. On the other hand, if the evidence established the fact to be, that the stop was not for a reasonable time, the defendants would be liable for an injury sustained by a passenger who, in the exercise of reasonable care and diligence, was attempting to alight when the train was started. But the liability in such case does not arise from the failure of those in charge of the train to observe the rules of the carrier adopted for their guidance; but because of the failure to exercise that degree of care which the law requires of the carrier. The observance of the rules of the carrier may or may not constitute due care; and likewise a failure to observe them may or may not constitute negligence. To otherwise state the proposition, the question is, was there a failure to exercise that degree of care which the law requires of the carrier for the safety of the passengers, and not whether or not some rule of the carrier has been violated. We think the requested instruction contained a correct statement of the law, that it was applicable to the evidence and should have been given.

The defendants assign as error the admission in evidence of the rules above mentioned, and also two others. One being under the head of "special instructions to passenger conductors," and reads: "See that the brakemen are at their posts on the platform to assist passengers in getting out, and to give them all necessary information * * *";

and the other, under the head of "Rules for passenger brakemen," as follows: "Assist passengers, especially women, children, and infirm persons, in entering and leaving the cars, or in passing from one car to another, giving special attention to their safety. Direct them on which side to leave the train   *   *   *.   While the train is waiting at a station, remain on the station platform at the car steps *   *   *."   So far as we have been able to discover, the rule of law announced in the decisions is, that "ordinarily there is no duty resting upon a carrier of passengers to assist a passenger in boarding or alighting from its trains or cars."   (13 A. & E. Ann. Cas. 596 (note) ;  6 Cyc. 611; 5 Enc. Law (2nd Ed.), 579, and cases cited in these references.)   There being no duty resting upon the defendants to assist the plaintiff to alight, the failure to do so would not be negligence rendering the defendants liable.   In this case there is no allegation in the petition that the plaintiff was a person requiring assistance by reason of physical infirmity or otherwise, nor is there any evidence to that effect, nor does it appear that she knew of the existence of the rules and relied upon their observance.   In so far as the rules required the brakemen to render personal assistance to such passengers in alighting from the cars, they required more than the law requires of the carrier for the safety of passengers.

It has been generally held, we think, that where the private rules of the carrier, adopted for the government of the conduct of its servants in the operation of its trains, do not require more than the law requires of the carrier with respect to the matters covered by such rules, their admission in evidence is not prejudicial.   But we think that where they require more than the law requires, or where they require the performance of acts which the law does not recognize as a duty devolving upon the carrier, they are inadmissible.   The question has not heretofore been passed upon by this court, and therefore we shall refer to the cases cited by counsel and to others which we have examined.   Counsel for plaintiff cite as supporting

their contention that the rules were admissible: Atlanta R. Co. v. Bates, 103 Ga. 333; Baltimore R. Co. v. State, 81 Md. 371; C. & A. R. R. Co. v. Kelly, 75 Ill. App. 490; Stevens v. Boston E. R. Co., 184 Mass. 476; Frizzell v. Omaha S. R. Co., 124 Fed. 176; Delaware L. & R. Co. v. Ashley, 67 Fed. 209; Carlson v. C. S. & M. R. Co. (Mich.), 79 N. W. 268; Street Ry. Co. v. Altemeier, Adm., 60 O. St. 10. In the case in 103 Ga., the rule admitted was: "Caution. Motormen shall run their cars at a moderate speed over curves, switches, turnouts, railroad crossings, and on down grades, whether behind time or not. You must keep your car under full control on approaching all street-crossings, and when there is a car standing at a crossing taking on or letting off passengers; or if you see that you are about to meet a car on a street-crossing, you must slow up and see that the track is clear before attempting to pass." It is apparent that this rule required nothing more than ordinary diligence, and is not applicable to the question we are now considering. In the case in 81 Md. the rule was: "441. When one passenger train is standing at a station receiving or discharging passengers on double track, no other train (whether passenger or freight) will attempt to run past until the passenger train at the station has moved on, or signal is given by the conductor of the standing train for them to come ahead." The same may be said of this rule as of the rule in the Georgia case; and the court in passing upon the question said: "We think the plaintiff was entitled to the benefit of the rule in evidence before the jury. Doubtless no such rule would have been adopted by the defendant, even for its own protection, if experience had not demonstrated its absolute necessity. * * * This court said in Hauer's case, 60 Md. 449, that 'passengers are justified in assuming that the company has, in the exercise of due care, so regulated its trains that the road would be free from interruption or obstruction when trains stop at a depot or station to receive or discharge passengers.' It thus significantly appears that the doctrine just announced and Rule 441 are closely analo-

gous." This, as we understand it, means that the rule required no more than the court had decided in the earlier case to be a duty devolving upon the company in the absence of any rule upon the subject.

In the case of L. S. & M. S. Ry. Co. v. Ward, 135 Ill. 511, the rule admitted in evidence was a joint rule of defendant and the Rock Island Co., and provided, "When passenger trains are at stations or street-crossings, receiving or discharging passengers, other trains or engines must not, under any circumstances, pass between the standing train and station, or until the track is known to be clear. Engineers and trainmen will look out for local and dummy trains, of both roads, that stop at street-crossings between Englewood and Chicago." In that case the defendant company had three main tracks, with two other tracks west and three switch tracks east of the main tracks at the place where the accident occurred. This rule required nothing more than the law requires under the circumstances. The same is true of the rule admitted in evidence in the case in 75 Ill. App., and in the Massachusetts case. In the case in 124 Fed., the negligence charged was that the street car was stopped on the near cross-walk on a street crossing, and then started again, while the plaintiff was attempting to alight from it. The defendant denied this charge, and averred that it had made a rule that its employes should not stop any car at the near crossing, and that they had obeyed this rule. The court said: "The adoption and enforcement of such a rule was certainly some evidence of reasonable care in the operation of all of its cars across the streets of the City of Omaha, including the car upon which the plaintiff was riding. In view of this fact, the admission of the rule in evidence cannot be said to be error." In that case two other rules offered by the plaintiff to the effect "that when a car was stopped the conductor shall give the signal for it to start, and that no car shall be started when a passenger is attempting to board or to alight from it," were rejected; and it was held that they should have been received. But the court said: "This

error was, however, robbed of all its potency by the subsequent charge of the court. At the close of the evidence the court instructed the jury that if this car stopped, and if the conductor knew that the plaintiff was alighting when the car started, the company was liable for all plaintiff's injuries as a matter of law. The jury could not have given the rules of the company and the alleged acts of the employes in violation of them any greater effect than to have charged the defendant with liability for plaintiff's injuries on account of them, and the court gave those acts, without the rules, that effect as a matter of law."

In the case in 67 Fed., the rule seems to have been admitted without objection. The case in 79 N. W. is not in point. In the case in 60 O. St., certain rules of the company and also a special order of the company as to the observance of the rules were admitted in evidence, and in passing upon the question of their admissibility, the court said: "The rules and order founded thereon do not in this case require a higher degree of care on the part of the street railway company than the law requires, and, therefore, their introduction was not prejudicial. * * * If their rules require more care of the employes for the safety of passengers than the law requires, it is easy for the court to say so to the jury, and point out what the law requires, and wherein the rules require more than the law, and that to the extent of the excess the company is more careful than is required by law." We fail to find authority in any of these decisions to support the contention that a rule of the carrier which requires a higher degree of care than the law requires is admissible in evidence against the carrier, except what is said in the last case cited. But there appears to be no good reason for the admission of evidence which the court should afterwards tell the jury did not tend to prove negligence for which the defendant would be liable.

The Supreme Court of Minnesota has held such rules inadmissible. In Fonda v. St. Paul City Ry. Co., 71 Minn. 438, that court said: "The court also admitted in evi-

dence, over defendant's objection, its rules, intended only for the guidance of its own employes in the operation of its cars. We think this was error. There was no evidence that the plaintiff had any knowledge of the existence of these rules or of any custom, based upon them, as to the manner of operating cars; hence his conduct could not have been in any way affected or influenced by them. It is not claimed that these rules require or permit anything that is inconsistent with reasonable care. The theory upon which they were offered was that they tended to show what duty the defendant owed to the public in the operation of its cars, and hence that a violation of any of them, being a breach of such duty, constituted actionable negligence, or at least was evidence of it. Private rules of a master regulating the conduct of his servants in the management of his own business, although designed for the protection of others, stands on an entirely different footing from statutes and municipal ordinances designed for the protection of the public. The latter, as far as they go, fix the standard of duty towards those whom they are intended to protect, and a violation of them is negligence in law or *per se*. But a person cannot, by the adoption of private rules, fix the standard of his duty to others. That is fixed by law, either statutory or common. Such rules may require more, or they may require less, than the law requires; and whether a certain course of conduct is negligent, or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party. * * * If we could hold, as a matter of law, that these rules required nothing more than was required in the exercise of reasonable care, their admission would be error without prejudice; but an examination of them satisfies us that we cannot so hold." The holding in that case . was approved in McKernan v. Detroit Citizens' St. Ry. Co., 138 Mich. 519. See also Dickson v. Grand Trunk Western Ry. Co. (Mich.), 118 N. W. 946.

We think the test is, whether or not a failure to observe the requirements of the rule, not shown to have been known

to and relied upon by plaintiff, would constitute actionable negligence. If the court can say as a matter of law that such failure is not a violation of any duty imposed by law upon the carrier, the rule should be excluded. One carrier may adopt one rule, and another carrier may adopt another, and if such rules are to be treated as admissions that due care requires their observance, then we would have as many different measures of liability as there are different rules; while the law has but one requirement for all, and that is, the exercise of that degree of care which it imposes on all carriers of passengers; and whether such care has or has not been exercised should be determined from what was done or omitted to be done in the particular case. What would be the exercise of due care under one state of facts might be negligence under a different state of facts.

Applying the law, as we understand it to be, to the facts of this case, the admission of the rules with reference to looking through the train before starting it, would not have been prejudicial had it been limited as requested in the instruction; but the rules requiring the brakemen to assist passengers to alight should have been excluded. The jury, under the instructions as given, may well have concluded that any violation of these rules by the servants of the company rendered it liable.

The defendants requested several instructions, which were refused, to the effect that if plaintiff attempted to alight from the train while it was in motion, or if she went upon the steps of the car while the train was in motion and was thrown therefrom by a sudden movement of the train, she could not recover. These instructions were properly refused, and the jury was properly instructed that "ordinarily a passenger would not be justified in getting off the train while in motion, except at his own risk. Unless the train is moving very slowly and the circumstances are specially favorable, it would be deemed *prima facie* negligence." There was evidence tending to show that the train had moved only a few feet and was going very slowly

when the accident occurred, and the jury was told that if her actions were such that under the circumstances an ordinarily cautious, careful and prudent person would have apprehended danger therefrom, then it was such an act of carelessness as would relieve the defendants from the responsibility resting upon them, and the verdict should be for the defendants. Some decisions have been cited holding that it is negligence *per se* for one to attempt to alight from a moving train; but an examination of those cases discloses a different state of facts from those in this case. In this case the evidence is conflicting as to whether the plaintiff stepped or jumped from the car, or was thrown therefrom by reason of a sudden jerk or movement of the train while she was on the steps of the car; and it was for the jury to say whether or not under the circumstances she was guilty of negligence. (Carr v. Eel River & E. R. Co. (Cal.), 33 Pac. 213.)

On the question of damages, the court instructed the jury that if they found for the plaintiff they "may allow such damages as may reasonably seem to them fit, for mental suffering and nervous shock, if any, which has resulted or may result from the said negligent act of the said defendant company." These instructions were excepted to by defendants, and the giving of them assigned as error in the petition in error, but were not stated or discussed in their brief, but were attempted to be raised long after the time for filing their brief (which had been extended on their application) had expired and after plaintiff's counsel had filed their brief. The objection was waived by the failure to present it in time, and cannot be considered in determining this appeal. But as the judgment is reversed on other grounds, it may not be out of place to suggest, without deciding the point, that similar instructions employing such terms as *"may* suffer," or *"may* be caused by said injury," have been held to be error. It was held in Ford v. City of Des Moines, 106 Ia. 94, "that it was of a nature to allow the jury to enter the domain of conjecture, and indulge in speculation to a greater extent than was

allowable; that the jury should have been directed that it might give the plaintiff damages for such future pain as was reasonably certain from the evidence she would suffer, and that the jury should have been clearly and positively instructed that it should determine as to the future suffering from the evidence alone." See also Westercomp v. Brooks, 115 Ia. 159; Hall v. C. R. & M. C. R. Co., 115 Ia. 18; Hardy v. Milwaukee St. R. Co., 89 Wis. 183; Chicago G. W. Ry. Co. v. Bailey (Kan.), 59 Pac. 659.

It is also urged that the amount of damages awarded the plaintiff is excessive. But as a new trial is granted, we refrain from expressing any opinion on that question.

The judgment of the District Court is reversed and the cause remanded for a new trial.          *Reversed.*

POTTER, C. J., and SCOTT, J., concur.