**145 So. 680**

## CADY v. NEW ORLEANS, T. & M. RY. CO.

### No. 31255.

### Jan. 3, 1933.

Williams & Blackshear, of Oakdale, for appellant.

Milling, Godchaux, Saal & Milling, of New Orleans, and Frank E. Powell, of DeRidder, for appellee.

ODOM, J.

Plaintiff prosecutes this appeal from a judgment rejecting his demands for damages against the defendant. As a cause of action he alleged that about March 1, 1930, he purchased from defendant through tickets for himself and family from Mauriceville, Tex., to Alexandria, La.; that his tickets provided for transportation on defendant's line of railroad to Kinder, La., where said road intersects the Missouri Pacific, which runs through Alexandria, and from Kinder to Alexandria on a motorbus operated by the latter company; that it was defendant's duty under its contract for safe passage to stop its train at Kinder in order that he and his family might transfer to the motorbus or car and continue their journey on to their destination. But that in violation of its duty defendant ran its train "on through the town of Kinder without your petitioner being informed or directed where to get off and without him being given an opportunity to get off with his family and proceeded eastward from Kinder some distance"; that when he noticed that the train had passed through Kinder he called that fact to the attention of an "officer of the train" and requested that "they back up and carry him back to the station at Kinder but they refused to do this"; and, further, that when the train was stopped at his request "the conductor and another officer of the train * * * put your petitioner and his family off in the rain about a quarter of a mile from the Kinder station."

He further alleged that it was raining and cold, that he and his family were compelled to walk back to the station through a drenching rain; that their clothing became wet; and that due to the delay thus caused, they missed the motorcar which made close connection with the train and had to wait five hours for a train, during which time they took shelter in defendant's waiting room at the station, which room was not heated, but cold and damp, and that as a result, certain members of his family became ill and suffered. He estimated his total damage at $3,002.50, for which he brought suit.

Defendant's answer is, in effect, a general denial coupled with affirmative allegations that it performed its whole duty toward plaintiff and his family.

A carrier of passengers by train owes to them the duty of having their stations announced as their trains approach them, and if it fails to do so, and if on account of such failure a passenger is carried beyond his destination, the carrier is liable for all damages proximately growing out of such breach of duty. It must stop its train at the station to which it contracts to carry a passenger, and must stop long enough to give him time to alight with safety. These general rules are recognized here and in other jurisdictions. Philip Dave v. Morgan's L. & T. Railroad, 47 La. Ann. 576, 17 So. 128; Bader v. So. Pacific Company, 52 La. Ann. 1060, 27 So. 584; Judice v. So. Pacific Company, 47 La. Ann. 255, 16 So. 816; Perrett v. Morgan's La. & Texas Ry. Co., 131 La. 986, 60 So. 639. See "Carriers," 4 R. C. L., pages 1086–8, §§ 537, 538; also "Carriers," 10 C. J. 829, § 1272.

Plaintiff's petition sets out a cause of action, but his case falls for lack of sufficient proof. Plaintiff and his wife testified that if those in charge of the train announced the approach to Kinder they did not hear them. But Mrs. Manuel, a passenger in the

same coach, said she heard the flagman call the station, and Aldredge, the conductor, said that prior to reaching the station he announced that the next station was Kinder, and Amiclo, the flagman, said he called the station and at the same time stated that all passengers for Alexandria would change cars at Kinder.

■ But to hold (which we cannot do under the testimony) that the station was not announced would not help plaintiff's case, for the reason that both plaintiff and his wife admitted on the stand that the train did stop at Kinder twice; once at a switch about 700 feet from the station, where four produce cars were set out, and then at the station; and plaintiff further admitted that he knew they were then at Kinder and knew that he and his family were to get off there. He was not misled by defendant's failure, if it did fail, to announce the station. It was broad daylight, plaintiff had changed cars there before, and recognized the place when he saw it. Therefore, if plaintiff was injured by reason of his being carried beyond the station, defendants' alleged breach of duty in failing to announce the station in no manner contributed to the injury. Under such circumstances, the question whether the station was or was not announced is immaterial. Chicago, B. & Q. Railroad Co. v. Elvira Lampman, 18 Wyo. 106, 104 P. 533, 25 L. R. A. (N. S.) 217, Ann. Cas. 1912C, 788; So. Railroad Co. v. Hobbs, 118 Ga. 227, 45 S. E. 23, 63 L. R. A. 68.

■ Plaintiff testified that, as the train approached the station after leaving the switch, he and his family got ready to alight, but that the stop was not of sufficient duration to permit them to do so. It is not only the duty of the crew to stop the train at the station where a passenger is due to alight, but they must allow it to remain there for a sufficient length of time to allow him to get off in safety. But here again plaintiff failed to make his proof. That the train remained at the station a sufficient time to allow plaintiff and the members of his family to alight in safety is abundantly established by the testimony.

A record kept by the station agent shows that the train stopped for six minutes. That may have included the time it was at the switch setting out the produce cars, which was not long. Aside from this record, it was shown that the usual routine of shifting mail pouches and baggage took place, and a number of witnesses testified that it remained at the station at least two, and probably three, minutes. That was sufficient for these passengers to alight, as none of them were aged or otherwise infirm.

■ It is not the duty of a railroad company, after giving its passengers notice, to see that they do alight, but to give them sufficient time to do so; and, having given them sufficient time, those in charge may assume that they have done so, unless there are peculiar circumstances known to them, or which in the exercise of due care should have been known, to indicate that they have not done so. Chicago, B. & Q. Railroad v. Lampman, supra; Ruling Case Law, supra.

■ Plaintiff's final contention is that he and his family were put off the train beyond the station. The facts are that about the time the train left the station plaintiff told the flagman that he wanted to get off there, and that the flagman signaled the engineer.

to stop, which he did approximately 700 feet from the station. Whereupon plaintiff and the others immediately got off. Plaintiff's wife said she asked the flagman if the train was not going to "back up" to the station. The flagman did not recall that. The conductor said he would have carried them back, but that they were all off before he knew it. It is certain that no demand or request was made by plaintiff that they be carried back. Their leaving the coach was purely voluntary.

Under the facts shown, defendant is not liable.

The judgment is affirmed.